# NEW JERSEY STEAMBOAT COMPANY *v.* BROCKETT.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF NEW YORK.

Argued April 22, 1887. — Decided May 2, 1887.

When the contract of a common carrier with a passenger assigns to the latter a particular part of the vessel or vehicle to be occupied by him during transportation, and he voluntarily occupies a place different from that contracted for, the carrier is released from liability for injuries which necessarily arise from the passenger's change of place; but it

continues bound to furnish safe transportation, and to indemnify the
passenger, under general rules of law, for injuries which do not directly
arise by reason of his change of place, or which are caused by improper
conduct of the carrier's servants, acting either in the scope of their gen-
eral duties, or in the discharge of special duties imposed upon them.

A common carrier undertakes absolutely to protect its passengers against
the misconduct or negligence of its own servants, employed in exe-
cuting the contract of transportation, and acting within the general
scope of their employment.

What will be misconduct on the part of the servants of a common carrier
towards a passenger cannot be defined by a general rule applicable to
every case, but must depend upon the particular circumstances in which
they are required to act; and in this case the issue was fairly placed
before the jury by the court.

Declarations made by one officer to another officer of a steamboat, while
both are engaged in violently removing a passenger from a part of the
vessel in which his contract of transportation did not entitle him to
be, are admissible in evidence as part of the *res gestæ,* in an action
brought by the passenger against the corporation owning the steamboat
and transporting the passenger, to recover damages for injuries result-
ing from the assault.

This action was brought to recover damages sustained by
the defendant in error, the plaintiff below, in consequence of
personal injuries inflicted upon him by the employes of the
plaintiff in error, a carrier of freight and passengers between
the cities of Albany and New York, in the state of New
York. A verdict and judgment having been rendered for the
sum of five thousand five hundred dollars, the case was
brought here for review, upon the ground that the court be-
low committed errors of law in the conduct of the trial.

The plaintiff averred that he was received by the defendant
as a deck passenger upon its boat, the Dean Richmond, at
Albany, and that, in consideration of his having paid the
price established for passengers of that class, it undertook
to carry him safely to the city of New York, and thereby
became bound that its servants and employes on said boat
should not needlessly injure him while engaged in the dis-
charge of their duties; that the defendant did not keep its
contract, but broke the same, in that, by its servants on said
boat, it needlessly and severely wounded him in his person
during the voyage to New York, whereby he was put to great

expense for surgical attendance, and whereby, also, incurable injuries were inflicted upon him. These allegations were accompanied by a statement of the circumstances under which, the plaintiff insists, the alleged wrongs were committed.

The answer denied generally that the company's agents or servants were guilty of negligence or improper conduct, and stated " that the plaintiff paid for a deck passage, and it received him on its boat as a deck passenger for passage to New York on a certain part of the boat allotted to deck passengers, as was well known to the plaintiff, and subject to long established rules and regulations of the defendant,' including that mentioned in the complaint, of which the plaintiff had due and full notice; that the said rules and regulations were reasonable, and the defendant's officers and employes on the said boat were charged with the duty of enforcing them in a reasonable and proper way, without unnecessary force or violence, and the said rules and regulations and the officers and employes of the boat in uniform were well known to the plaintiff; that the plaintiff did not remain on the part of the boat allotted to deck passengers, and did not obey the said reasonable rules and regulations of defendant, but refused so to do, and contrary to the peace, quiet, good order, and safety of the said boat and its passengers, made a disturbance on the said boat, and the defendant neither used nor authorized any undue or unnecessary force or violence in the enforcement of the aforesaid rule and regulation, but the contrary thereof, and the plaintiff was not injured by any of the defendant's officers, employes, or agents, as alleged in the complaint."

The evidence was conflicting. The charge and the rulings of the court below are stated or referred to in the opinion of the court below.

*Mr. W. P. Prentice* and *Mr. James Lowndes* for plaintiff in error.

I. On the face of the complaint no cause of action is shown. The action was brought on a contract alleged to have been made between the parties. Now the contract on the part of

the company, alleged, was to carry the plaintiff as deck passenger, but the allegations of the complaint are in effect an admission that Brockett received his injury at a place on the deck where he was not entitled to be, under his contract. The complaint further alleged the existence of the regulations of the place for deck passengers, and that the action arose from the enforcement of this regulation by the watchman charged with such duty.

The disobedience and resistance of the defendant in error were admitted by him in his evidence. On the complaint and the evidence a verdict should have been directed for the plaintiff in error. *Marshall* v. *Hubbard,* 117 U. S. 415; *Gilmer* v. *Higley,* 110 U. S. 47; *Randall* v. *Baltimore & Ohio Railroad,* 109 U. S. 478.

II. If it is said that Brockett need not aver compliance with his contract in respect of keeping himself on the stipulated deck, then it would follow that the contract does not bind him at all. If the injury had been inflicted on him on another boat, or on the wharf at Albany, or on the wharf at New York, could he recover under his contract, or would the cause of action be other than that averred in the complaint? The contract was to carry Brockett forward of the shaft. No duty arose to him under the contract as to any other place. *Gilmer* v. *Higley,* above cited.

III. On all the evidence the plaintiff was not entitled to recover, and the court erred in refusing so to instruct the jury. The plaintiff testified that his ticket contained these words, "deck passengers not allowed abaft the shaft." Placards up at the clerk's office, which he admits having seen, called his attention to the conditions of his passage. The ticket is the contract or the evidence of the contract. The complaint, however, does not state the important qualifications of the contract contained in the ticket, and the company was entitled to a verdict on the ground of this variance. But, if it is assumed that the contract was sufficiently pleaded, and the cause of action set forth by the necessary averments of a breach, the evidence failed to sustain a case so stated. Brockett was where he had no right to be. His injury was the result of an

accident in the fall upon the vessel in his scuffle with the watchman. And he himself admits that he had refused to obey orders and come down from the hops. He did not try to obey, but says, "I tried to get back." The jurisdiction of the action of defendant's servants was complete, unless the conversation after the accident, and the officers'. acts after the accident added some new liability, and in respect to their subsequent acts, Brockett's evidence stands alone uncorroborated.

The plaintiff's evidence clearly was that the alleged injury was done to him abaft the shaft. He had no recollection of having gone forward of the shaft at all. And he resisted the effort to enforce the regulation to make him leave an improper place and come down from the hops.

The evidence on the part of the defendant company did not make any better case for the plaintiff. Every allegation, except those above stated, was denied by two or three witnesses, and no effort was made to impeach their credibility. Three witnesses sustain the watchman's story of the occurrences before and after the accident. The only additional evidence was that of the cross-examination of the watchman as to fights he had, subsequent to this occurrence, and when not in the employ of the company. The question upon the evidence was for the judge — whether the plaintiff's statement, uncorroborated, was sufficient to support a verdict in the face of the admitted facts and the other testimony by which he was contradicted. *Randall* v. *Baltimore & Ohio Railroad*, 109 U. S. 478; *Marion County* v. *Clark*, 94 U. S. 278; *Vanderbilt* v. *Richmond Turnpike Co.*, 2 N. Y. 479;[1] *Searles* v. *Manhattan Railway*, 101 N. Y. 661; *Culhane* v. *N. Y. C. & H. R. R.*, 60 N. Y. 133; *Higgins* v. *McRae*, 116 U. S. 671.

IV. The court erred in ruling "*if you believe that statement (of the plaintiff) to be true, then I say, as a matter of law, that there was more force than was necessary to accomplish the result, and the plaintiff is entitled to a verdict,*" while refusing to rule that if the plaintiff, by his own fault, got involved in a personal quarrel with the watchman, and was injured in consequence of such quarrel, he cannot have relief in this

---

[1] *S. C.* 15 Am. Dec. 315.

action against the defendant, but must look to the watchman.

The effect of the above instruction, and of the above refusal, taken together, was to put to the jury the plaintiff's case, without any qualification, and to take away from it one important feature of the company's case.

It is not disputed that Brockett was in a position in which he had no right to be, and which was unsafe, and that he did not obey the order to come down. The right of the company by its servant to remove him, is not in dispute. It is not disputed that Thiel took hold of Brockett and that Brockett fell: The taking hold of him was lawful as a means of removing him. Brockett says, "*I didn't try to come down, I tried to get back.*" Thiel testified that the consequent fall was an accident due to the derangement of the boxes. If so, the injury to Brockett was the consequence of his own fault. But the charge ignored these circumstances, and in effect, made the laying hold of Brockett, by Thiel, the actionable conduct. It suggested also, a responsibility of the company, for acts after the accident, which was denied on the strongest evidence. *Barney* v. *Oyster Bay & Huntington Steamboat Co.*, 67 N. Y. 301.

But, in addition to the facts above referred to, there was evidence to the fact that Brockett struck Thiel before the latter had laid hands on the former. This evidence changed the whole transaction. Brockett was not at liberty to strike the company's servants. If he did so, he had to bear the consequences of his conduct. Story on Agency, p. 318. The jury could not but have been misled by the charge and the refusal to charge. The charge in effect discredited the company's evidence, and gave weight to Brockett's statement of occurrences after the accident and after he had received his injury. *Thorney* v. *London, Brighton & South Coast Railway*, 3 C. B. 368; *Ætna L. Ins. Co.* v. *France*, 91 U. S. 510.

V. The court erred in admitting testimony which must have greatly prejudiced the jury against the defendant company.

1. Brockett testified against objection that a man wearing the uniform of the company approached after his fall and said, "You farmers are so stingy — you are too stingy to buy

a stateroom and you ought to be killed." The case was one in which it was of great importance to the defendant company that the issues should be submitted to the jury without irrelevant matter. Instead of that method of trial, evidence was introduced of declarations after the event which constituted no part of the *res gestas*. The declarations were not only calculated to excite prejudice in the minds of a class, which probably was represented on the jury, but must have affected the mind of any humane man. It is not too much to say that after these declarations were introduced in evidence, the company could not get an impartial consideration of its evidence. The object of the rules of evidence in our system is to prevent the influence upon the jury of such irrelevant matter. *The company is not liable in law for the brutal language of its servants.*

2. The company's witness, Thiel, was permitted, on cross-examination, to say that he had been engaged in several fights. This evidence was irrelevant and prejudiced the defendant company. The point is whether the question eliciting it could be properly put, on cross-examination, when it was not to impair the credibility of the witness, as the purpose of the question was stated when the court ruled upon it. The evidence was not connected in any way with the testimony of Thiel on his direct examination, and was injurious to the company. It was, therefore, incompetent in the federal courts. *Oil Company* v. *Van Etten*, 107 U. S. 325; *Wills* v. *Russell*, 100 U. S. 621; *Burley* v. *German-American Bank*, 111 U. S. 216; *Philadelphia & Trenton Railroad* v. *Stimpson*, 14 Pet. 448, 460; *Vicksburg & Meridian Railroad* v. *O'Brien*, 119 U. S. 99.

3. Evidence was admitted, against objection, of visits made to Brockett by officers of the company. Such testimony was irrelevant, and was injurious to the defendant company.

*Mr. Eugene E. Sheldon* for defendant in error.

MR. JUSTICE HARLAN, after stating the case as above reported, delivered the opinion of the court.

We will not extend this opinion by a recital of all the facts and circumstances established by the proof. It is sufficient to say that there was evidence tending to sustain both the allegations of the complaint and the averments in the answer. In view of the serious conflict in the statements of witnesses, the case was one peculiarly for the determination of a jury, under appropriate instructions as to the law. The court, therefore, rightfully refused to direct a verdict for the company, unless, as claimed, the plaintiff, according to his complaint and the evidence, had no cause of action.

It appears from the complaint that the company had a regulation restricting deck passengers to a particular part of the boat; but of the existence of that rule, the plaintiff averred, he did not, at the time, have notice. It also appears by uncontradicted evidence that, upon the ticket purchased by the plaintiff, were printed the words "deck passengers not allowed abaft the shaft," and that placards, in different parts of the boat, indicated the place on it which such passengers were prohibited from occupying. As the plaintiff was "abaft the shaft" when injured, no case, it is insisted, was made that would sustain an action upon the contract of transportation; consequently, it is contended, the request to instruct the jury to find for the defendant should have been granted. This argument assumes that the plaintiff could not claim protection under the contract for safe transportation in respect to an injury done him by the company's servants while he was upon a part of the boat other than that to which he was restricted by the rule or regulation printed on his ticket. This position cannot be sustained. We shall not stop to inquire whether the regulation in question is shown to be a part of the contract for transportation; and we assume, for the purposes of this case, that the plaintiff stipulated that, during the voyage, he would remain upon the part of the boat to which deck passengers were assigned; still, it would not follow that his violation of that stipulation deprived him of the benefit of his contract. Such violation only gave the carrier the right to compel him to conform to its regulation, or, upon his refusing to do so, to require him to leave the boat, using,

in either case, only such force as the circumstances reasonably justified. If the injuries necessarily arose from his violation of the regulation established for deck passengers, the carrier would not be responsible therefor. But if they were not the necessary result of his being, at the time, on a part of the boat where he had no right to be, and were directly caused by the improper conduct of the carrier's servants, either while acting within the scope of their general employment, or when in the discharge of special duties imposed upon them, he is not precluded from claiming the benefit of the contract for safe transportation.

The plaintiff was entitled, in virtue of that contract, to protection against the misconduct or negligence of the carrier's servants. Their misconduct or negligence whilst transacting the company's business, and when acting within the general scope of their employment, is, of necessity to be imputed to the corporation, which constituted them agents for the performance of its contract with the passenger. Whether the act of the servant be one of omission or commission, whether negligent or fraudulent, "if," as was adjudged in *Philadelphia & Reading Railroad* v. *Derby*, 14 How. 468, 486, "it be done in the course of his employment, the master is liable; and it makes no difference that the master did not authorize or even know of the servant's act or neglect, or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant's employment." See also *Philadelphia, Wilmington & Baltimore Railroad* v. *Quigley*, 21 How. 202, 210. "This rule," the Court of Appeals of New York well says, "is founded upon public policy and convenience. Every person is bound to use due care in the conduct of his business. If the business is committed to an agent or servant, the obligation is not changed." *Higgins* v. *Watervliet Turnpike Co.*, 46 N. Y. 23, 27. The principle is peculiarly applicable as between carriers and passengers; for, as held by the same court in *Stewart* v. *Brooklyn & Crosstown Railroad*, 90 N. Y. 588, 591, a common carrier is bound, as far as practicable, to protect its passengers, while being conveyed, from violence committed by strangers and co-passengers, and undertakes absolutely to protect them against

the misconduct of its own servants engaged in executing the contract.

What will be misconduct on the part of its servants towards a passenger cannot be defined by a general rule applicable to every case, but must depend upon the particular circumstances in which they are required to act. In the enforcement of reasonable regulations established by the carrier for the conduct of its business, the servant may be obliged to use force. But the law will not protect the carrier if the servant uses excessive or unnecessary force. This doctrine is well illustrated in *Sanford* v. *Eighth Avenue Railroad,* 23 N. Y. 343, 345.[1] In that case it appeared that the plaintiff's intestate got upon a street railroad car in the night time, and, after being shown to a seat, refused, without sufficient cause, to pay his fare. He was ordered to leave the car, and, failing to do so, the conductor led him to the forward platform, and, without stopping the car, forcibly ejected him therefrom. The injuries received by the passenger resulted in his death. The court said: "It must be conceded that the conductor had a right to expel the intestate for the reason that he would not pay his fare when asked to do so. But this was not a right to be exercised in a manner regardless of all consequences. A person cannot be thrown from a railroad train in rapid motion without the most imminent danger to life; and, although he may be justly liable to expulsion, he may lawfully resist an attempt to expel him in such a case. As the refusal of a passenger to pay his fare will not justify homicide, so it fails to justify any act which in itself puts human life in peril; and the passenger has the same right to repel an attempt to eject him, when such attempt will endanger him, that he has to resist a direct attempt to take his life. The great law of self-preservation so plainly establishes this conclusion that no further argument is necessary. . . . It is said that the intestate offered resistance when he was thus seized. But this he had a right to do in order to save life, which he had not forfeited by refusing to pay the fare. He was liable, as we said, to be expelled, and the conductor's assault would have

---

[1] *S. C.* 80 Am. Dec. 286.

been justified if the car had been stopped, and the expulsion had been made without unnecessary violence. But, as the conductor had no right to make the assault, when he did and as he did, so the law will justify such resistance as was offered to that assault." See also *Hoffman* v. *New York Central & Hudson River Railroad*, 87 N. Y. 25; *Rounds* v. *Delaware, &c., Railroad*, 64 N. Y. 129, 134; *Lynch* v. *Metropolitan Railway*, 90 N. Y. 77; *Ramsden* v. *Boston & Albany Railroad*, 104 Mass. 117, 121; *Noble* v. *Cunningham*, 74 Ill. 51, 53; *Northwestern Railroad* v. *Hack*, 66 Ill. 242; *Robinson* v. *Webb*, 11 Bush, 464, 482.

In the present case the jury were instructed, in substance, that the plaintiff had no right to be in any part of the boat except that assigned to deck passengers, and that the carrier's servants had the right — using no more force than was necessary — to remove him from the place where he was found by the watchman. Referring to the testimony of the plaintiff, the court observed: "He says that he went upon the bales of hops, remained there a short time, went to sleep, and was awakened by the watchman, Thiel, striking him with a cane; that he struck him first on the feet, afterwards in the face, and told him to get down. He asked Thiel if he was doing any harm there, and asked to be allowed to stay. Part of the answer was, 'Get down, come down.' The assault upon him continuing, he then put up his satchel for protection, and was thereupon caught by the collar of his coat and pulled headlong from the freight, his shoulder striking one of the barrels standing near, dislocating it or causing the injury which has been described. He says that upon regaining his feet he was again struck by the watchman. Soon after another officer of the boat came and he was pushed towards the shaft and told that was the part of the boat for him to remain in; that he went to the barber shop, and there for the first time read his ticket and saw the requirement in reference to deck passengers. That very briefly is the statement of the plaintiff." The court proceeded: "If you believe that statement to be true, then I say, as a matter of law, that there was more force than was necessary to accomplish the result, and the plain-

tiff is entitled to a verdict." To this last part of the charge the defendant took an exception. But we perceive no ground upon which the exception can properly rest. If the statements of the plaintiff were true, then neither argument nor citation of authorities is necessary to show that undue force was used by the company's servants. And it was the right of the court to so instruct the jury.

But that the jury might, also, have in mind the case as made by the defendant, the court said : " On the other hand, you have the testimony of the witness Thiel, who says he came to the freight two or three times before the transaction and told plaintiff to get down; that the other passengers all got down; that on the third occasion he stepped on a box and told him to come down; that the plaintiff, instead of doing so, endeavored to climb higher or get away from him; that the plaintiff kicked him in the breast, and in the excitement he caught hold of him, and in the struggle which ensued, the boxes, the plaintiff, and the witness came down together in a crash upon the floor. If you believe that statement, then the plaintiff brought this assault upon himself; it was an unavoidable accident, and the plaintiff is not entitled to recover. Other witnesses have been called, who in part corroborate the story of the watchman, and in some particulars corroborate the story of the plaintiff."

The whole case was thus fairly placed before the jury upon the issue, as to whether the defendant's servants, in executing its regulation as to deck passengers, used unwarrantable force and thereby caused the injuries of which the plaintiff complains.

One objection made by the defendant to the admission of evidence deserves to be noticed. The plaintiff in his evidence described the manner in which, as is contended, he was dragged by the watchman from the boxes. After stating that he was thrown to the floor, and was being roughly pushed by the watchman, he proceeded: " *Then* I saw another man coming with the uniform of the boat on, and the cap, and he said: ' All such men as you ought to be killed.' I says, ' What do you want to kill me for?' he says, ' You farmers are so stingy,

you are too stingy to buy a state-room, and you ought to be killed.' I said, 'You ought not to call me stingy;' then he said, 'Have you looked at your ticket?' I think he had 'third assistant mate' on his cap, the cap had a yellow cord, the same as the officers of the boat wore." It appeared, in proof, that the person here referred to was one of the mates of the Richmond.

The defendant objected, at the trial, to the competency of the statements of the mate. The objection was overruled and an exception taken. It is now insisted that the defendant is not responsible for the brutal language of its servants, and that the declarations of the mate to the plaintiff were not competent as evidence against the carrier. We are of opinion that these declarations constituted a part of the *res gestæ.* They were made by one servant of the defendant while assisting another servant in enforcing its regulation as to deck passengers. They were made when the watchman and the mate, according to the evidence of the plaintiff, were both in the very act of violently "pushing" him, while in a helpless condition, to that part of the boat assigned to deck passengers. Plainly, therefore, they had some relation to the inquiry, whether the enforcement of that regulation was attended with unnecessary or cruel severity. They accompanied and explained the acts of the defendant's servants out of which directly arose the injuries inflicted upon the plaintiff. *Vicksburg & Meridian Railroad* v. *O'Brien*, 119 U. S. 99, 105; *Ohio & Mississippi Railway* v. *Porter*, 92 Ill. 437, 439; *Toledo & Wabash Railway* v. *Goddard,* 25 Ind. 185, 190, 191. As bearing upon this point, it may be stated that the jury were instructed that the case, as presented, did not authorize vindictive or punitive damages, and that in no event could they award the plaintiff any larger amount than would reasonably compensate him for the injuries received; thus guarding against undue weight being given to the harsh words of the company's servants, apart from their acts.

Other questions arise upon the admission of evidence against the objection of the defendant; upon the refusal of the court to grant requests for instructions in its behalf; and upon cer-

tain parts of the charge, to which it excepted. In our opinion none of these questions require consideration; and the action of the court, in respect to them, constitutes no ground for the reversal of the judgment. The charge of the court embodied all that need have been said. It correctly stated the propositions of law arising in the case. No substantial error having been committed, the judgment is

*Affirmed.*