### CHESAPEAKE & O. RY. CO. v. STOJANOWSKI.

(Circuit Court of Appeals, Second Circuit. July 13, 1912.)

#### No. 248.

1. RAILROADS (§ 400*)—ACTION FOR INJURY TO PERSON—QUESTIONS FOR JURY.

Where the fact was undisputed that plaintiff lost his arm by being run over by a train on defendant's railroad, but the evidence was in direct conflict as to whether he was on the train and was thrown off by one of the trainmen, or was walking beside the track and caught hold of a car and attempted to get on, the question was properly submitted to the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. § 400.*]

2. RAILROADS (§ 282*)—LIABILITY FOR INJURIES—ACTS OF EMPLOYÉS.

Where a man riding on a freight train at night wore a plate on his cap and carried a lantern with which he gave signals for the movement of the train, the presumption is that he was the authorized agent of the railroad company and that his action in throwing plaintiff from the train was done in the due course of his employment, and the railroad company is responsible for such act whether authorized or not.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 910–923; Dec. Dig. § 282.*]

In Error to the District Court of the United States for the Eastern District of New York.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action at law by John Stojanowski against the Chesapeake & Ohio Railway Company. Judgment for plaintiff for $4,080.20, and defendant brings error. Affirmed.

See, also, 191 Fed. 720, 112 C. C. A. 310.

Kenneth B. Halstead and Frederick J. Moses, for plaintiff in error. Louis Boehm, for defendant in error.

Before COXE, WARD, and NOYES, Circuit Judges.

COXE, Circuit Judge. The plaintiff brings this action to recover damages for the loss of his right arm occasioned, as he insists, by the negligence of the defendant in throwing him from a moving coal train near Eagle Mountain Station, Va.

The action has been tried twice. On the first trial the jury rendered a verdict of $5,000 and on the second trial a verdict of $4,000.

On writ of error to this court the judgment entered upon the first verdict was reversed because of error in excluding the train sheet showing the arrival and departure of trains at Eagle Mountain Station. The question of jurisdiction was directly decided against the defendant upon the authority of Sleicher v. Pullman Co. (C. C.) 170 Fed. 365.

[1] Our former decision is reported in 191 Fed. 720, 112 C. C. A. 310.

The questions involved were duly argued and were carefully considered by this court with the result that we found but one error of sufficient gravity to require reversal. We took pains, however, to call the attention of counsel to one piece of evidence, the admission of which we regarded as of doubtful propriety, in order that it might be avoided upon the new trial, viz., the plaintiff's testimony that he was married. It is highly improbable that we should have regarded the admission of this fact as sufficiently prejudicial to warrant a reversal. In short, it sufficiently appears from the opinion that, but for the exclusion of the train sheet, the judgment would have been affirmed. If the court had been of the opinion that the plaintiff had failed to prove a cause of action, it certainly would have so ruled and would not have subjected the parties to the useless expense of a new trial. Upon the main issue the record presents a clear cut question of fact. The plaintiff was born in Poland. At the time of the accident he had been in this country about three weeks and did not speak English. He testified, that on the day in question he boarded a loaded coal car on defendant's road, the train having stopped to take on water at Eagle Mountain Station, Va. He sat down on the car, which was about the eighth from the engine. He saw two men at the engine and a third man with a lantern, who gave a signal with the lantern, and thereafter the train started. This man was dressed in a dark blue or black suit with yellow buttons and wore a cap on which was a plate. After the plaintiff had been on the car between ten and fifteen minutes and the train had attained the usual speed of a coal train, the man who had swung the lantern came to the plaintiff and said "Get out of there." The plaintiff endeavored to hand his passport and workman's identification book to this man but he struck it

from plaintiff's hand. As the plaintiff stooped down to pick up the book the man "grabbed" him by the collar and threw him off the car, after which the plaintiff remembers nothing until he regained consciousness in a West Virginia hospital.

The defendant denies that any such occurrence as this took place. The testimony offered by it is to the effect that the plaintiff and another man were walking along the track when a long freight train, composed of box cars, and possibly a few coal cars also, came along. The plaintiff caught it and "it jerked him under." The witness Lyle says:

"He went to get on. He took his hand and caught hold of the ladder that goes under the car, and the thing jerked him under when he grabbed it; it jerked him under the car. It cut his arm off."

The defendant contends that plaintiff's testimony is so improbable and so contrary to the weight of evidence that the court should have directed a verdict for the defendant.

The plaintiff insists that the case presents a question of fact which was properly submitted to the jury.

In approaching this question we start with the uncontradicted fact that the plaintiff lost his right arm by being run over on the defendant's railroad. It may be conceded that there are many improbabilities in the plaintiff's theory of the accident; but is this not equally true of the defendant's theory?

Here was a train of freight cars with no facilities for boarding except ladders on the sides or ends of the cars, the bottom rung being several feet above the roadbed, running at the rate of ten or twelve miles an hour. Is it probable that a sane man would attempt to get onto such a train? It was clearly for the jury and not for the court to weigh the probabilities and decide between the two theories. The testimony is substantially the same as on the former appeal, and we see no reason to change the opinion then formed that the question was for the jury.

[2] It is argued that there is nothing to show that the trainmen were authorized, in any circumstances, to eject trespassers from the train. It will be observed that the plaintiff did not, indeed he could not, characterize the employment of the man who threw him off. He did not attempt to say whether he was conductor or brakeman. He did show that this man was apparently in a position of authority, directing the movements of the train. In such circumstances the presumption is that he was the duly authorized agent of the defendant and that what he did on the defendant's train was done in the due course of his employment. In the case of Steamboat Co. v. Brockett, 121 U. S. 637, 7 Sup. Ct. 1039, 30 L. Ed. 1049, which arose in this circuit, a trespasser was assaulted and injured by the members of the defendant's crew on a Hudson river steamboat. The court said:

"It makes no difference that the master did not authorize or even know of the servant's act or neglect, or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant's employment."

See, also, Mott v. Consumers' Ice Co., 73 N. Y. 543; Rounds v. D. L. & W. R. R. Co., 64 N. Y. 129, 21 Am. Rep. 597; Girvin v.

N. Y. Central & Hudson River R. R. Co., 166 N. Y. 289, 59 N. E. 921.

We cannot assent to the proposition that the servant is within the scope of his authority so long as he acts with circumspection and prudence and outside of it the moment he acts improperly or negligently. Such a rule would put an end to all actions based upon the negligence of agents. It would enable a railroad company to say in substance: Our servants and agents represent us so long as they act with discretion, but the moment their negligence causes injury to others, they cease to be our representatives.

It is urged by the defendant that it was prejudicial error not to permit the withdrawal of a juror because of statements made by counsel in the opening address to the jury relating to the plaintiff's poverty and generally helpless condition immediately prior to the accident.

It frequently happens that counsel in opening draw a more vivid picture than is justified by the facts. Such exaggeration generally carries with it its own punishment. The jury notices the discrepancy between the opening and the proof and is quite likely to resent it. In the present case, however, all prejudicial statements of this kind made by plaintiff's counsel either in the opening or summing up were stricken out and the jury were instructed to disregard them. If the verdict had been for an exorbitant amount there might be some ground for the assertion that the jury were influenced by these remarks. The verdict was $1,000 less than the previous verdict and it must be conceded that $4,000 is a moderate sum to compensate a young workingman, 25 years of age, for the loss of his right arm.

We have examined all of these exceptions as well as the exceptions taken to the refusal of the court to strike out testimony and find none of them well taken.

The judgment is affirmed.