Jane DOE, Plaintiff,

v.

CELEBRITY CRUISES, Zenith Shipping Corp., et al.,
Defendants.

No. 00–2523–CIV.

United States District Court,
S.D. Florida.

Feb. 26, 2001.

Gerhardt Adam Schreiber, Mary Lou Rodon-Alvarez, Schreiber Rodon-Alvarez, Coral Gables, FL, George J. Tsimis, Stephan Skoufalos, Richard M. Ziccardi, Skoufalos Llorca & Ziccardi, Stamford, CT, for plaintiff.

Ralph O. Anderson, Hicks Anderson & Kneale, Miami, FL, Jeffrey Bradford Maltzman, Darren Wayne Friedman, Kaye Rose & Maltzman, Miami, FL, for defendants.

## *ORDER ON DEFENDANTS' MOTIONS TO DISMISS*

GOLD, District Judge.

**THIS CAUSE** is before the court upon the motions to dismiss (DE # 8, 27) filed by defendants Celebrity Cruises ("Celebrity"), Apollo Ship Chandlers ("Apollo"), and Zenith Shipping Corp. ("Zenith").[1] Defendant M/V Zenith has not filed a motion to dismiss, and it appears from the record that the individual defendant, Baris Aydin ("Aydin"), never was served with a sum-

---

1. Both motions to dismiss are identical. DE # 8 was filed by Celebrity and Apollo, and DE # 27 was filed by Zenith. Celebrity, Apollo, and Zenith are collectively referred to as "the defendants" throughout this order.

mons and copy of the complaint. The plaintiff, Jane Doe, filed a nine-count complaint against the defendants alleging as follows: count I, breach of contract of carriage (against Celebrity, Zenith, and M/V Zenith); count II, negligence (against Celebrity, Zenith, M/V Zenith, and Apollo); count III, sexual assault (against Celebrity, Zenith, M/V Zenith, Apollo, and Aydin); count IV, battery (against Celebrity, Zenith, M/V Zenith, Apollo, and Aydin); count V, intentional infliction of emotional distress (against Celebrity, Zenith, M/V Zenith, Apollo, and Aydin); count VI, negligent infliction of emotional distress (against Celebrity, Zenith, M/V Zenith, Apollo, and Aydin); count VII, negligent infliction of emotional distress (against Celebrity, Zenith, and M/V Zenith); count VIII, intentional infliction of emotional distress (against Celebrity, Zenith, and M/V Zenith); and count IX, breach of contract (against Celebrity, Zenith, and M/V Zenith). The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in dispute is over $75,000. The court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1333 insofar as this matter involves claims that come under the court's admiralty jurisdiction. The defendants seek to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed herein, the defendants' motions to dismiss are granted in part and denied in part.

### Facts[2]

The M/V Zenith is a passenger vessel owned, managed, and operated by Celebrity and/or Zenith. Apollo provides crewing, manning, and other services for Celebrity's vessels. At all relevant times, Aydin, a Turkish resident, was a crew member of the M/V Zenith.

In 1999, the plaintiff purchased a passenger ticket for a seven-day cruise aboard the M/V Zenith from New York, New York to Bermuda and back to New York. The plaintiff boarded the M/V Zenith on July 17, 1999, and, on that day, the vessel departed to Bermuda. On July 19, 1999, the M/V Zenith anchored in the port of Hamilton, Bermuda, which was a scheduled port-of-call for the seven-day cruise. (Compl. at ¶ 14).

The plaintiff disembarked from the M/V Zenith with her friends and proceeded to go ashore at Hamilton. In the early morning hours of July 20, 1999, while in Hamilton with friends, the plaintiff began to feel ill. She accepted the assistance of crew member Aydin, who the plaintiff had recognized as a staff member from the M/V Zenith. (Compl. at ¶ 16). Instead of taking the plaintiff to the vessel, which was docked across the street, Aydin led the plaintiff away from her friends and to a nearby public restroom. (Compl. at ¶ 17). Despite the plaintiff's protests, Aydin proceeded to sexually assault and batter her. (Compl. at ¶¶ 18–20).

After the attack by Aydin, the plaintiff returned to the M/V Zenith and reported the incident to local authorities and the vessel's security department. The plaintiff saw the vessel's physician for treatment of her injuries and trauma, but she claims that the physician failed to examine her correctly, preserve evidence of the sexual

---

**2.** The following facts are derived from the allegations contained in the plaintiff's complaint.

assault, protect her from a sexually transmitted disease or pregnancy, or administer a rape kit. (Compl. at ¶ 22). The plaintiff further claims that Celebrity, Zenith, the doctor, and other crew members sought to protect the legal interests of the defendants and shield themselves from liability by failing to investigate the incident or properly collect and preserve evidence. (Compl. at ¶ 22, 23). Aydin was not disciplined by the other defendants, and he continued to work aboard the M/V Zenith until local law enforcement authorities took him into custody. (Compl. at ¶ 24).

### Standard for Motion to Dismiss

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir.1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Svcs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted); *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which

relief can be granted. *Sea Vessel, Inc. v. v. Reyes*, 23 F.3d 345, 347 (11th Cir.1994) (citation omitted). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

### Analysis

The defendants make several arguments in support of their motions to dismiss. Their principal contention is that, as a matter of maritime law, they cannot be held strictly liable for Aydin's tortious conduct. The defendants also argue that they cannot be liable for the ship doctor's negligence because they had no duty to provide medical care nor to investigate Aydin's alleged assault. Finally, the defendants seek to dismiss the breach of contract claims by arguing that the law of admiralty will not imply a contractual provision guaranteeing a safe passage. Each of these points is addressed below.

### I. Applicable Law

■ Because this case involves maritime torts, federal admiralty law controls. *See Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir.1990). Even when, as here, the parties allege diversity of citizenship as a basis of subject matter jurisdiction, if admiralty jurisdiction also exists, federal maritime law governs the substantive issues in the case. *See id.* When neither a uniform statutory or judicially-created maritime rule provides an answer to a specific legal question, a court

may apply state law, as long as application of the state law does not frustrate national interest in having uniformity in admiralty law. *See Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.,* 207 F.3d 1247, 1251 (11th Cir.2000).

## II. Can Vicarious Liability Be Imposed for Aydin's Tortious Conduct?

■ In counts III, IV, V, and VI, the plaintiff seeks to hold the defendants vicariously liable for Aydin's sexual assault. The defendants seek to dismiss these counts by arguing that vicarious liability is an improper standard of care. They contend that cruise ship operators owe passengers "care which is reasonable under the circumstances." *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 410, 3 L.Ed.2d 550 (1959). This standard is akin to a negligence standard, which requires some fault on the part of the cruise ship operator. ·For the reasons discussed in the following subsection, the court rejects the defendants' argument and agrees with the plaintiff's position that a cruise ship operator can be held vicariously liable for its employee's intentional torts.

### A. The Circuits Are Split

Uncertainty exists among the courts as to whether the proper standard of care for a ship owner sued for an employee's intentional tort is strict liability or negligence. While most circuits that have addressed this issue find that ship owners should be held strictly liable for their employees' misconduct, one circuit, the Second, has required that negligence by the cruise ship be shown. The Eleventh Circuit has not yet addressed this issue.

The debate among the circuits stems from the case of *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). Until *Kermarec* was decided, admiralty law was clear that a common carrier was strictly liable for its servants' misconduct against passengers, whether the act was committed within or outside the scope of the servant's employment. *See New Jersey Steamboat Co. v. Brockett,* 121 U.S. 637, 7 S.Ct. 1039, 30 L.Ed. 1049 (1887) (holding that ship owner could be held vicariously liable for employee's forcible removal of passenger from area of ship); *New Orleans & N.E.R.R. Co. v. Jopes,* 142 U.S. 18, 12 S.Ct. 109, 35 L.Ed. 919 (1891) (expanding *Brockett*'s strict liability standard to include situations where servant acted outside scope of employment, such as by shooting passenger). *Kermarec,* however, became a source of confusion because, rather than applying a strict liability standard, the Court adopted a negligence test for holding ship owners liable. The Court stated that the "owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances." *Kermarec,* 358 U.S. at 632, 79 S.Ct. at 410.

While *Kermarec* applied a different standard to determine a ship owner's liability, it did not overrule *Brockett* or *Jopes,* implicitly or explicitly. The *Kermarec* Court did not cite *Brockett* or *Jopes,* and all of the precedent relied on by the Court in *Kermarec* involved personal injuries aboard ships, not intentional torts by crew members. Also, unlike *Brockett* and *Jopes, Kermarec* did not involve a tort inflicted upon a passenger by a crew member; it involved a personal injury claim that arose from a visitor's fall down a defectively-constructed flight of stairs.

Only the Second Circuit has interpreted *Kermarec* broadly enough to eliminate vi-

carious liability for a crew member's intentional torts. According to district courts within the Second Circuit, whether a case involves an underlying intentional tort or negligent act, a ship owner can be held liable for its employee's conduct only if the owner did not exercise reasonable care under the circumstances. In *Jaffess v. Home Lines, Inc.*, 1988 WL 42049, No. 85 CIV 7365 (S.D.N.Y. Apr. 22, 1998), the court held that, where a crew member assaulted a passenger in the ship's elevator, the ship owner could not be held vicariously liable. *Id.* at *5. Instead, "some 'specific neglect' on the part of the ship owner must be shown before the ship owner can be held liable, even for an intentional assault." *Id.* Because the ship owner showed care in hiring, supervising, and segregating employees from passengers, the court held that the owner was not liable for its employee's conduct. *Id.; see also York v. Commodore Cruise Line, Inc.*, 863 F.Supp. 159, 162 (S.D.N.Y.1994) (applying *Kermarec* standard to case involving sexual and verbal assaults by crew member against passenger). As a result of these decisions, the *Kermarec* negligence standard of reasonable care applies to intentional torts by crew members within the Second Circuit.

In contrast to the Second Circuit, the First, Fifth, and Ninth Circuits (the only other circuits that have decided the issue) have adopted the standard of care urged by the plaintiff in this case and applied by the Supreme Court in *Brockett* and *Jopes*. These circuits hold ship owners vicariously liable for the willful misconduct of their crew members. For instance, in *Muratore v. M/S Scotia Prince*, 845 F.2d 347 (1st Cir.1988), the First Circuit upheld the district court's imposition of vicarious liability for the ship photographers' intentional harassment of the plaintiff. The First Cir-

cuit stated, "[A] maritime carrier has an 'unconditional responsibility for the misconduct of its people toward the passengers'." Id. at 353. Similarly, in *Jackson Marine Corp. v. Blue Fox*, 845 F.2d 1307 (5th Cir.1988), the Fifth Circuit held that a ship captain's fraud and misrepresentations could be imputed to the ship owner because "the general maritime law imputes to the principal the servant's acts committed within the scope of a servant's employment. . . ." *Id.* at 1310.

In *Morton v. De Oliveira*, 984 F.2d 289 (9th Cir.1993), the Ninth Circuit held that the ship owner was absolutely liable for the crew member's rape of a passenger. Significantly, the Ninth Circuit rejected the very same position adopted by the defendants in this case and the district courts of the Second Circuit—that *Kermarec* imposes a negligence standard in passenger assault cases. *Morton*, 984 F.2d at 291. According to the Ninth Circuit, *Kermarec* should be limited to its facts, which involve a personal injury claim, not an intentional tort. *Id.* at 292. The court stated that, in passenger assault cases, "[I]t is a widely adopted rule that common carriers owe such an absolute duty to their passengers." *Id.* Thus, in the Ninth Circuit, *Kermarec*'s negligence standard is applied only to personal injury cases, while vicarious liability remains the rule for passenger assaults.

## B. The Eleventh Circuit

According to the defendants, the Eleventh Circuit would apply the *Kermarec* standard to the facts of this case because it adopted *Kermarec* in *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318 (11th Cir.1989), and in subsequent cases, such as *Everett v. Carnival Cruise Lines*, 912 F.2d 1355 (11th Cir.1990). The defendants' ar-

gument is without merit because both *Keefe* and *Everett* involved negligence claims against ship owner's, not crew members' assaults upon passengers. *See Everett*, 912 F.2d at 1356 (slip and fall); *Keefe*, 867 F.2d at 1320 (same). In fact, the Eleventh Circuit has not yet had an opportunity to address the question of whether a ship owner can be held vicariously liable for its employee's intentional torts, but, if it were faced with this issue, the Eleventh Circuit would likely adopt the approach of the First, Fifth, and Ninth Circuits.

It is significant that three out of the four circuits that have decided the issue of a ship owner's liability for crew members' assaults upon passengers have adopted the approach relied on by the plaintiff. This majority view makes the most sense because it limits *Kermarec* to its facts, while implicitly recognizing that Supreme Court cases such as *Brockett* and *Jopes* are have not been overruled. Additionally, in *Tullis v. Fidelity and Casualty Company of New York*, 397 F.2d 22 (5th Cir.1968), the former Fifth Circuit, while reviewing a negligence claim against a ship owner, recognized that "the unconditional responsibility of the carrier for the misconduct of the crew toward passengers" is the only exception to the rule that ship owners can be held liable for personal injury only if negligence on their part is established. *Id.* at 23. Because *Tullis* is binding on the Eleventh Circuit,[3] further support exists for the conclusion that the Eleventh Circuit would find ship owners vicariously liable for their employees' intentional misconduct. Accordingly, this court shall adopt the approach of the First, Fifth, and Ninth Circuits.

## C. Scope of Employment

### 1. The Circuits Are Split

The conclusion that a ship owner can be held vicariously liable for an employee's assault upon a passenger is not dispositive of the defendants' motion to dismiss. As the defendants point out, there remains the question of whether a ship owner can be vicariously liable for its servant's tortious conduct when the act in question is committed outside the scope of its servant's employment. Throughout her complaint, the plaintiff attempts to hold the defendants liable under a theory of unconditional vicarious liability, for she fails to allege that Aydin committed the sexual assault within the scope of his employment. According to the defendants, because Aydin's conduct did not occur within the course and scope of his employment or in furtherance of the ship's business, they cannot be held liable, even under the theory of vicarious liability.

Authority exists to support the defendants' position. In *Jackson Marine Corp. v. Blue Fox*, 845 F.2d 1307 (5th Cir.1988), the Fifth Circuit applied a vicarious liability standard and imputed liability upon a ship owner for a captain's fraudulent execution of a contract. However, the Fifth Circuit repeatedly emphasized that, in order to bind the ship owner, the acts of the employee must be performed within the scope of the agency. *Id.* at 1309–10. It stated, "This agency relationship makes the owner responsible for both contracts made by the captain as well as the captain's torts, so long as the torts are committed within the scope of the captain's normal duties and employment." *Id.* at

3. The Eleventh Circuit adopted as binding precedent all cases decided by the former Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981).

1310. The Fifth Circuit went on to apply a number of factors [4] in determining whether the actions of the captain were imputable to the ship owners, and it found that the factors militated strongly in favor of imputing the captain's actions to the ship owners. *Id.*

Although no circuit other than the Fifth has directly decided whether a ship owner can be liable for tortious conduct committed by a servant who acts outside the scope of his or her employment, authority also exists to support the plaintiff's position. In *New Orleans & N.E.R. Co. v. Jopes,* 142 U.S. 18, 12 S.Ct. 109, 35 L.Ed. 919 (1891), the Supreme Court held that a railroad company could be liable for the shooting of a passenger by a conductor.[5] It also removed the requirement that a servant act within the scope of his or her employment in order to impose vicarious liability on a common carrier. The Court reviewed cases and commentaries discussing the duties of common carriers and stated, "[I]t may be said that the carrier is liable for every conceivable wrongful act done to a passenger by its train hands and other employees while they are engaged in transporting him, no matter how willful and malicious the act may be, or how plainly apparent from its nature that it could not have been done in furtherance of

the carrier's business." *Id.,* 142 U.S. at 26, 12 S.Ct. at 112. It added, "[O]wing to the peculiar circumstances which surround the carrying of passengers, as stated, a more stringent rule of liability has been cast upon the employer; and he has been held liable although the assault was wanton and willful, and outside the scope of the employment." *Id.,* 142 U.S. at 27, 12 S.Ct. at 112. *Jopes* has never been overruled or called into question by the Supreme Court or any other court aside from the Fifth Circuit. Accordingly, the doctrine still holds. Moreover, in *Morton v. De Oliveira,* 984 F.2d 289 (9th Cir.1993), the Ninth Circuit cited with approval several state court cases that held common carriers "vicariously liable for assaults committed by employees even outside their employment during the contract for transportation". *Id.,* 984 F.2d at 292 (citing *St. Michelle v. Catania,* 252 Md. 647, 250 A.2d 874, 876–78 (App.1969); *Whittle v. Southern Bell Tel. & Tel. Co.,* 306 S.C. 163, 410 S.E.2d 575, 575 (S.C.App.1991); *Nazareth v. Herndon Ambulance Svc., Inc.,* 467 So.2d 1076, 1078–81 (Fla. 5th DCA 1985)).

## 2. Florida Law

From this survey of case law, it is apparent that federal admiralty law is split

---

4. In deciding whether the captain had acted within the scope of his employment, the Fifth Circuit considered the following factors: (1) the time, place and purpose of the act; (2) its similarity to acts which the servant is authorized to perform; (3) whether the act is commonly performed by such servant; (4) the extent of departure from normal methods; (5) the previous relations between the parties; and (6) whether the master would reasonably expect that such an act would be performed. *Jackson Marine Corp.,* 845 F.2d at 1310.

5. Although the defendant in *Jopes* was a railroad company, *Jopes* is applicable to the facts of this case because some of the decisions

relied on by the Supreme Court involved passenger cruise ships. More importantly, trains and cruise ships are considered common carriers of passengers, so common carrier standards are applicable to both modes of transportation. *See* 46 U.S.C.App. § 1702(6) (defining common carrier as "a person holding itself out to the general public to provide transportation by water of passengers or cargo between the United States and a foreign country for compensation"); *see also Shultz v. Florida Keys Dive Center, Inc.,* 224 F.3d 1269, 1273 (11th Cir.2000) (describing cruise ships as common carriers).

as to whether a ship owner can be held vicariously liable for torts committed outside the course of a servant's employment. When there is no uniform, binding federal law, application of state law is proper. *See Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.,* 207 F.3d 1247, 1251 (11th Cir.2000). As a result, applying Florida law to the instant facts would in no way alter the uniformity of admiralty decisions. The general rule is that the assault and rape of a plaintiff by the defendant's employee is considered to be outside the scope of employment and, therefore, insufficient to impose vicarious liability on the employer. *See Liberti v. Walt Disney World Co.,* 912 F.Supp. 1494, 1507 (M.D.Fla.1995); *Nazareth v. Herndon Ambulance Svc., Inc.,* 467 So.2d 1076, 1078 (Fla. 5th DCA 1985). However, like other states, Florida recognizes an exception for common carriers. *See Restatement (Second) of Agency* § 214. For example, in *Nazareth,* 467 So.2d 1076, a Florida court held that an ambulance service was vicariously liable for an ambulance attendant's sexual assault of a passenger because the assault occurred en route to the hospital. The court explained that an "established exception to the general rule [of nonliability] is where the employer is a common carrier for hire to the public, and the tort or attack is by an employee upon a passenger while the contract for transport is being accomplished." *Nazareth,* 467 So.2d at 1078. Other Florida courts are in accord. *See, e.g., Nadeau v. Costley,* 634 So.2d 649, 652 (Fla. 4th DCA 1994) (holding cruise line liable for employee's sexual assault of passenger, notwithstanding fact

that it was outside scope of employment); *Commodore Cruise Line, Ltd. v. Kormendi,* 344 So.2d 896, 898 (Fla. 3d DCA 1977) ("[I]n comparison to an ordinary master-servant relationship, a common carrier is liable to a passenger for the wrongful acts of his or her employees during the contractual period, notwithstanding the fact that said acts are not within the scope of the employees employment.").

Under Florida law, then, it is clear that the plaintiff's failure to allege that Aydin's assault occurred within the scope of his employment is not fatal to her complaint. Rather than showing that the assault occurred within the scope of Aydin's employment, the plaintiff need only show that the assault occurred during the contractual period. *See Nadeau,* 634 So.2d at 652; *Kormendi,* 344 So.2d at 898. However, a review of the plaintiff's complaint reveals that she has failed to allege that the assault, which occurred while the M/V Zenith was docked at Hamilton, Bermuda, took place during the relevant contractual period. For this reason, counts III, IV, V, and VI are dismissed without prejudice so that the plaintiff can amend her complaint accordingly.

### III. Medical Negligence

▇▇▇▇ In counts II,[6] VII, and VIII the plaintiff seeks to hold the defendants liable for the cruise ship doctor's underlying negligence in failing to treat her assault-related injuries properly. These claims fail as a matter of law. It is a long-established rule in admiralty that "a ship owner cannot be responsible for the negligence of its

---

**6.** Count II of the plaintiff's complaint contains general allegations of negligence, which include the defendants' alleged failure to investigate, to properly supervise its employees, and to properly render medical care. This subsection addresses count II only as it relates to the plaintiff's allegations regarding the doctor's improper medical treatment of the plaintiff.

ship doctor." *Warren v. Ajax Navig. Corp. of Monrovia,* 1995 WL 688421 *3, No. 91–0230 (S.D.Fla. Feb. 3, 1995) (stating principle); *Mascolo v. Costa Crociere,* 726 F.Supp. 1285, 1286 (S.D.Fla.1989) (holding that ship doctor's negligence could not be imputed to ship owner). A plaintiff may properly bring a claim against a ship owner for negligence if the owner did not exercise reasonable care in selecting a competent doctor. *See Warren,* at *4; *Mascolo,* 726 F.Supp. at 1286 n. 1. Because the plaintiff has failed to allege negligent hiring or retention as it relates to the ship's doctor, the defendants' motion to dismiss is granted on this issue. Counts VII and VIII are dismissed in their entirety, and the allegations contained in count II that relate to the doctor's underlying negligence are stricken.

## IV. Duty to Investigate

■ Among the allegations contained in count II of the complaint is the plaintiff's contention that the defendants were negligent in failing to investigate the assault properly. *See* Compl. at ¶ 37(j). In their motion, the defendants argue that, as a matter of law, they cannot be held liable for failing to investigate the plaintiff's sexual assault. The plaintiff has failed to respond to this argument, and her failure to file an opposing memorandum "may be deemed sufficient cause for granting the motion by default." *See* S.D.Fla.L.R. 7.1(C). Even if this were not true, the court finds that the defendants' motion to dismiss on this point is meritorious. *See York v. Commodore Cruise Line, Ltd.,* 863 F.Supp. 159, 164 (S.D.N.Y.1994) (holding that ship owner's alleged failure to investigate assault did not constitute negligence); *Jaffess v. Home Lines, Inc.,* 1988 WL 42049 *6, No. 85 CIV 7365 (S.D.N.Y. April 22, 1988) (stating that there is "no authority for extending a ship owner's duty to aiding a passenger in investigating an assault after it occurs"). Accordingly, the allegations of count II that relate to the defendants' alleged failure to investigate the assault are stricken.

## V. Breach of Contract

■ Counts I and IX of the complaint are for breach of contract of carriage and breach of contract, respectively. According to the plaintiff, the defendants breached an implied contractual duty when they failed to transport her to and from the cruise destination with the highest degree of care and vigilance for her safety. The defendants argue that these claims fail to state a cause of action because such a contractual obligation cannot be implied under the law of admiralty. In support of their argument, they rely on *Hass v. Carnival Cruise Lines,* 1986 WL 10154, No. 86–33–CIV (S.D.Fla. Mar. 20, 1986), where this court held that maritime law will not imply a warranty of seaworthiness and will not support a breach of contract action unless there is an express provision in the contract of carriage guaranteeing safe passage. *Hass,* at *1.

In her complaint, the plaintiff relies on no express contractual provision guaranteeing safe passage. Instead, she argues that such a duty is implied under Florida law and that the federal rule on implied duties is not dispositive. While Florida cases may allow such claims, the rule within this district is clear that breach of contract actions cannot be implied. *See Hass,* at *1. As a result, the court cannot look to state law to decide the matter. *See Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.,* 207 F.3d 1247, 1251 (11th Cir.2000) (stating that application of state law is proper only in absence of uniform,

binding federal law). Moreover, the actual contract of carriage, which is attached as an exhibit to the complaint, flatly contradicts a duty to provide safe passage. Clause 3 of the contract states, "No undertaking or warranty shall be given or shall be implied as to the seaworthiness, fitness, or condition of the Vessel...." Clause 4 adds, "Any medical personnel ... are provided solely for the convenience of the Passenger.... Carrier assumes no liability whatsoever for any treatment, diagnosis, advice, examination or other services provided by such persons." Given this language and the case law cited above, the plaintiff may not proceed with her causes of action for breach of contract, and counts I and IX are dismissed.

## VI. Negligence

Count II of the plaintiff's complaint contains several allegations of negligence. Two of these (the duty to investigate and underlying medical negligence) have been addressed elsewhere in this order. In support of their motions to dismiss count II, the defendants argue that the plaintiff has failed to otherwise state a cause of action for negligence because she has not pled sufficiently the elements of a claim for negligent hiring. The defendant ignores the fact that count II contains several other allegations of negligence. For example, the plaintiff has claimed that: (1) the defendants failed to enforce their non-fraternization policies, which, if enforced, might have averted the sexual assault and battery of the plaintiff; (2) the defendants failed to properly control, supervise, and restrict their crew; (3) the defendants failed to provide proper security measures; and (4) the defendants failed to warn female passengers of the potential dangers of being on board and ashore with crew members. *See* Compl. at ¶ 37.

Although the defendants arguments regarding the pleading of negligent hiring are insufficient grounds to dismiss count II, the defendants are correct that the plaintiff has failed to allege the proper standard of care under count II. Nowhere in this count does the plaintiff allege that the defendants failed to exercise "reasonable care under the circumstances." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632, 79 S.Ct. 406, 410, 3 L.Ed.2d 550 (1959). Because count II does not contain an allegation regarding the proper standard of care for a negligence action, that count is dismissed without prejudice.

## VII. Punitive Damages and Attorneys' Fees

■ In their request for relief, the plaintiffs seek both punitive damages and attorneys' fees, but, under admiralty law and the facts of this case, neither of these are recoverable. The Eleventh Circuit has held that punitive damages are not available for negligence claims in admiralty cases. In *In re Amtrak "Sunset Limited"*, 121 F.3d 1421 (11th Cir.1997), the Eleventh Circuit stated, "Unless or until the United States Supreme Court should decide to add state remedies to the admiralty remedies for personal injury, personal injury claimants have no claim for nonpecuniary damages such as ..., punitive damages, except in exceptional circumstances...." *Id.* at 1429. The same rule applies in maritime tort actions where a plaintiff seeks to hold a defendant vicariously liable for the actions of its employees. *See Muratore v. M/S Scotia Prince, Etc.*, 845 F.2d 347, 354 (1st Cir.1988) (holding that principal could not be held liable for punitive damages where it neither authorized nor ratified employee's acts). Accordingly, the plaintiff cannot recover punitive damages.

██ The defendants also correctly argue that the plaintiff cannot recover attorneys' fees in this case.[7] Under federal maritime law, absent specific federal statutory authorization for an award of attorneys' fees, the prevailing party is not entitled to those fees. *See Garan, Inc. v. M/V Aivik,* 907 F.Supp. 397, 399 (S.D.Fla.1995) (holding that federal maritime common law preempted state statute that permitted recovery of attorneys' fees). The plaintiffs have failed to show that a statute authorizes attorneys' fees in this case, and, as a result, their request for attorneys' fees is stricken. Accordingly, it is:

**ORDERED AND ADJUDGED** that:

1. The defendants' motions to dismiss (DE # 8, 27) are granted in part and denied in part.

2. Counts I, VII, VIII, and IX of the plaintiff's complaint are dismissed with prejudice.

3. Counts III, IV, V, and VI of the plaintiff's complaint are dismissed without prejudice.

4. The allegations contained in count II that relate to the doctor's negligence and the defendant's alleged duty to investigate are stricken, and the remainder of count II is dismissed without prejudice.

5. The plaintiff's request for punitive damages and attorney's fees are stricken.

6. The plaintiff has twenty (20) days from the date of this order to file an amended complaint.

---

7. The plaintiff's opposition to the motion to dismiss does not address this point.