**Maranda STIRES, Plaintiff,**

v.

**CARNIVAL CORPORATION d/b/a Carnival Cruise Lines, Defendant.**

**No. 6:02–cv–542–Orl–31JGG.**

United States District Court, M.D. Florida, Orlando Division.

Nov. 7, 2002.

Order Denying Motion to Amend Nov. 21, 2002.

---

1314

Jackson O. Brownlee, Beusse, Brownlee, Bowdoin & Wolter, P.A., Orlando, FL, Richard Robol, Robol Law Office, LPA, Columbus, OH, for Plaintiff.

Timothy William Ross, Jeffrey B. Maltzman, Darren Friedman, Kaye, Rose & Maltzman, LLP, Miami, FL, for Defendant.

## ORDER

PRESNELL, District Judge.

This Court has for its consideration Defendant's Motion to Dismiss Plaintiffs' Amended Complaint and incorporated memorandum of law (Doc. 29) and Plaintiff's Response thereto (Doc. 37). The Court has carefully considered the Plaintiff's Amended Complaint, the Defendant's Motion and accompanying memorandum, Plaintiff's Response and accompanying memorandum, and is otherwise fully advised in the premises.

## I. BACKGROUND FACTS[1]

In response to an advertisement in her home state of Ohio, Plaintiff, Maranda Stires, along with her grandmother, mother, and cousin, planned a cruise with De-fendant Carnival Corporation d/b/a Carnival Cruise Lines ("Carnival") on the M/S Tropicale. Stires and her family boarded the Tropicale on September 23, 2000 in Florida.

Soon after boarding the ship, one of the ship's head-waiters, Ruben Sanchez, began making sexual overtures towards Stires. On September 28, 2000, at approximately 12:20 a.m., Stires left the casino on the eighth floor of the Tropicale to search for her cousin in the dining room. Sanchez, while allegedly acting in concert with other employees, took Stires to the floor on which the crew's quarters were located and proceeded to sexually assault her. Later that same night, Sanchez recommenced the sexual assault. However, this time, Sanchez did not stop at assaulting Stires, but proceeded to commit sexual battery on Stires. During the course of the sexual assault and battery, Sanchez repeatedly referred to Stires as a "puta," the Spanish word for whore. After the sexual battery, Stires returned to her cabin where she collapsed.

After washing her face and hands, Stires located her mother and told her of the battery. Stires and her mother asked Carnival's employees if Stires could make a report to the captain of the Tropicale. The employees declined the request. Instead, the employees directed Stires to the ship's nurse and doctor who performed a physical examination on Stires. The examination revealed signs of the sexual battery. During the course of the examination, the doctor remarked "Ruben and the other waiters, oh yes, we on the ship know all about them." Stires inquired if that meant that Carnival knew of Sanchez' sexual propensity. The doctor replied, "You have to understand that I'm paid by Carnival."

---

1. As required, this Court accepts the allegations of the complaint as true and reads the complaint in the light most favorable to Stires.

Following the examination, Stires asked if she could shower. She was not permitted to do so. As a result, Stires was forced to remain in the soiled condition for 48 hours after the battery. The staff did, however, promise that upon docking, they would ensure that Stires would be taken to a local hospital. Carnival did not keep this promise.

Subsequently, Stires requested all documents and information in Carnival's possession concerning the sexual battery. Carnival produced no documents and told Stires that Sanchez was a Colombian national with no ties to the United States. Carnival further stated that there had been no previous problems and that Carnival would ensure that Sanchez was deported from the United States. Purportedly, Carnival made these false representations in order to induce Stires' reliance thereon.

On May 7, 2002, Stires filed a multi-count complaint against Carnival asserting jurisdiction based upon both admiralty and diversity jurisdiction. The complaint was later dismissed (*See* Order, Doc. 23) for Stires' failure to respond to Carnival's motion to dismiss (Doc. 17). Stires filed an Amended Complaint asserting the following claims: (1) negligence; (2) negligent investigation, hiring, retention, supervision, and management; (3) assault, battery, and rape under the theory of respondeat superior; (4) intentional infliction of emotional distress under the theory of respondeat superior; (5) fraud and misrepresentation; (6) breach of duties as a common carrier; (7) liability under *Doe v. Celebrity Cruises*, 145 F.Supp.2d 1337 (S.D.Fla.2001); (8) violation of Florida's Deceptive and Unfair Trade Practices Act, section 501.101 *et seq.*, Florida Statutes; (9) punitive damages in the amount of $37,500,000.

## II. STANDARD OF REVIEW

A court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Sea Vessel, Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994) (citation omitted). In evaluating a motion to dismiss a complaint, the court must accept all the alleged facts as true, and draw all inferences from those facts in the light most favorable to the plaintiff. *See, e.g., Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir.1994). The court, however, does not generally accept as true conclusory allegations. *South Florida Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n. 10 (11th Cir.1996) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir.1974)). A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). Consideration of matters beyond the complaint is improper in the context of a motion to dismiss. *Id.*

## III. ANALYSIS

### A. Standard of Care

Carnival asserts that Stires has failed to state a claim because she has alleged an improper standard of care throughout her complaint. In this vein, Carnival argues that the only duty owed to Stires is that of reasonable care under the circumstances citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). Carnival's argument is only partially correct.

■ As discussed in *Doe v. Celebrity Cruises,* 145 F.Supp.2d 1337, 1341–45 (S.D.Fla.2001), *Kermarec* is distinguishable on its facts and absent binding Eleventh Circuit precedent, the majority rule is that a common carrier, such as a cruise line, is vicariously liable for the intentional torts of its employees. *See id.* and citations discussed therein. However, to state a claim of negligence against a cruise ship owner a plaintiff must allege that the defendant failed to exercise "reasonable care under the circumstances." *Doe,* 145 F.Supp.2d at 1347. Thus, each type of claim may have a different standard of care and the applicable standard for each count will be addressed as necessary.

### B. Negligence (count 1)

Carnival avers that Stires has failed to state a claim for negligence because her claim does not state the proper standard of care. A review of Stires' complaint reveals that she has alleged different standards of care within her negligence count. Stires asserts that Carnival had the duty "to exercise reasonable care . . . ." (Pl. Am. Compl. at ¶ 85). Then, she asserts, "Defendant had a heightened standard of care toward Plaintiff . . . ." (*Id.* at ¶ 87). Thus, it appears that Stires is intermingling a different standard of care from her other claims into her negligence claim. Accordingly, Stires' negligence claim is dismissed without prejudice. Should Stires choose to replead her negligence claim, she should allege that Carnival failed to exercise reasonable care under the circumstances and allege facts sufficient to show Carnival's own acts were negligent. *Doe,* 145 F.Supp.2d at 1347–48.

■ However, to the extent that Stires is attempting in her negligence claim to hold Carnival liable for the negligent acts of the ship's doctor and nurse, no cause of action exists. "[A] ship owner cannot be responsible for the negligence of its ship doctor." *Id.* at 1345–46 (citations omitted). Accordingly, any negligence claim by Stires against Carnival for the negligent acts of the M/S Tropicale's doctor or nurse is dismissed with prejudice.

### C. Negligent Investigation, Hiring, Retention, Supervision, and Management (count 2)

■ Carnival asserts that Stires has failed to aver facts sufficient to show a breach of duty to exercise reasonable care in hiring. Carnival's assertion is misplaced. In order to state a cause of action for the tort of negligent hiring or retention recognized in Florida, a plaintiff must allege facts showing that the employer was put on notice of the harmful propensities of the employee. *Willis v. Dade County Sch. Bd.,* 411 So.2d 245, 246 (Fla. 3d DCA 1982). The principal difference between negligent hiring and negligent retention as a basis for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness. *Garcia v. Duffy,* 492 So.2d 435, 438 (Fla. 2d DCA 1986). Negligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background. *Id.* (citing *Williams v. Feather Sound, Inc.,* 386 So.2d 1238 (Fla. 2d DCA 1980)).

In paragraphs 94, 101, and 102, Stires alleges that Carnival was negligent in screening, hiring, investigating, retaining, and supervising Sanchez and its other employees and that such negligence was the proximate cause of her damages. Furthermore, in the factual allegations of her complaint, which are incorporated by reference in count 2, Stires asserts that Carnival and its employees (the medical staff)

were aware of Sanchez's propensities. This is sufficient under Federal Rule of Civil Procedure 8(a)'s requirement for a short and plain statement. Dismissal for failure to state a claim is inappropriate unless it appears that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. Hence, dismissal is inappropriate. However, Stires should allege only one standard of care in her amended complaint for this count ("reasonable care under the circumstances"), not both a reasonableness standard and a heightened standard of care. *Doe,* 145 F.Supp.2d at 1347.

**D. Intentional Infliction of Emotional Distress—Respondeat Superior (count 4)**

 Carnival argues that Stires has not established a prima facie case of intentional infliction of emotional distress because this count is "merely an imperfect repetition of other counts of the Amended Complaint." (Def. Mot. at 9). "To prove intentional infliction of emotional distress under Florida law, [a] plaintiff must prove: [1] deliberate or reckless infliction of mental suffering; [2] by outrageous conduct; [3] which conduct must have caused the suffering; and [4] the suffering must have been severe." *Hart v. United States,* 894 F.2d 1539, 1548 (11th Cir.1990) (citing *Metropolitan Life Ins. Co. v. McCarson,* 467 So.2d 277, 278 (Fla.1985)) (quoting 46, Restatement (Second) of Torts (1965)). Comment d of the Restatement Second further provides:

> Extreme and outrageous conduct ... It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*McCarson,* 467 So.2d at 278–79; *see also Clemente v. Horne,* 707 So.2d 865, 866 (Fla. 3d DCA 1998). It is not enough that the defendant intended to inflict emotional distress, that the defendant's intent was tortious or criminal, or that the conduct was motivated by malice. *Clemente,* 707 So.2d at 867. Furthermore, under Florida law, whether a person's conduct is sufficiently outrageous or intolerable as to form the basis for a claim of intentional infliction of emotional distress is a matter of law for the court, not a question of fact. *DeShiro v. Branch,* No. 96–800–CIV–T–17E, 1996 WL 663974, *4 (M.D.Fla.1996) (citing *Baker v. Florida Nat'l Bank,* 559 So.2d 284, 287 (Fla. 4th DCA 1990); *Gandy v. Trans World Computer Tech. Group,* 787 So.2d 116, 119 (Fla. 2d DCA 2001)).

 As discussed in *Doe,* 145 F.Supp.2d at 1341–45, Carnival is vicariously liable for the intentional torts of its employees, including the intentional infliction of emotional distress. Although the basis of this claim is the same as the negligence claims, at this stage of the proceedings, it cannot be said that Stires can prove no set of facts that would entitle her to relief. Therefore, this count should not be dismissed. *Id.*

**E. Fraud and Misrepresentation (count 5)**

 Carnival urges dismissal of the fraud and misrepresentation claim for fail-

ure to plead with particularity. Although Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement," Federal Rule of Civil Procedure 9 requires in relevant part: "In all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Rules 8 and 9(b) must be read in tandem so as not to abrogate the concept of notice pleading. *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir.1988); *NCR Credit Corp. v. Reptron Elecs., Inc.*, 155 F.R.D. 690, 692 (M.D.Fla. 1994). The elements for actionable fraud are (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation. *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla.1984); *Lopez–Infante v. Union Cent. Life Ins. Co.*, 809 So.2d 13, 15 (Fla. 3d DCA 2002) (citations omitted); *see also Durham*, 847 F.2d at 1512; *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D.Fla.1998).

■ A reading of the Amended Complaint reveals that Stires has properly plead her fraud and misrepresentation claim with sufficient particularity. In paragraphs 16 through 20, which are incorporated by reference in count 5, Stires alleges specific misrepresentations of Carnival both written and oral, knowledge on the part of Carnival that the statements were false when the misrepresentations were made, where the misrepresentations occurred, that the statements were made to induce Stires to rely on them, and

Stires' detrimental reliance on the statements. Accordingly, dismissal is not proper.

## F. Breach of Duties as a Common Carrier (count 6)

Carnival avers that Stires' claim for breach of contract (count 6) fails as a matter of law. Stires, on the other hand, claims that she is not asserting a claim for breach of contract, but rather, a claim for breach of the duties of a common carrier. To the extent that Stires is attempting to plead a breach of contract or breach of contract of carriage claim in count 6, her efforts are for naught.

■ First, Stires has not placed the contract into the record. Second, a cruise line passage contract is a maritime contract governed by general federal maritime law. *Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 766 (D.C.Cir.1992); *see also The Moses Taylor*, 71 U.S. (4 Wall) 411, 427, 18 L.Ed. 397 (1866). Even if the contract was before the Court, unless the contract expressly guaranteed safe passage, maritime law will not support a breach of contract of carriage guaranteeing safe passage. *Doe*, 145 F.Supp.2d at 1346–47 (citing *Hass v. Carnival Cruise Lines, Inc.*, 1986 WL 10154, No. 86–33–CIV–KING (S.D.Fla. Mar. 20, 1986)); *see also Jackson v. Carnival Cruise Lines, Inc.*, 203 F.Supp.2d 1367, 1377–78 (S.D.Fla.2002). This is so, despite the fact that Florida courts allow a plaintiff to bring a claim for breach of contract of carriage against cruise lines for the tortious conduct of crew members.[2] *Doe*, 145 F.Supp.2d at 1346–47. General maritime

---

2. *Compare Doe,* 145 F.Supp.2d at 1346–47 *with Nadeau v. Costley,* 634 So.2d 649, 650–51 (Fla. 4th DCA 1994) *and* cases cited therein *and Commodore Cruise Line, Ltd. v. Kormendi,* 344 So.2d 896, 897–98 (Fla. 3d DCA 1977) ("[A] contractual duty arises between a passenger and common carrier obligating the carrier to transport the passenger to his or her destination, exercising the highest degree of care and vigilance for the passenger's safety.").

law is federal law. *Coastal Fuels Mktg., Inc. v. Florida Exp. Shipping Co., Inc.*, 207 F.3d 1247, 1250 (11th Cir.2000) (citation omitted).

Only when neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law. *Id.* at 1250–51 (citing *Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1488 (11th Cir.1986) ("One must identify the state law involved and determine whether there is an admiralty principle with which the state law conflicts, and, if there is no such admiralty principle, consideration must be given to whether such an admiralty rule should be fashioned. If none is to be fashioned, the state rule should be followed.") (other citations omitted)). The rule within the Eleventh Circuit is clear that breach of contract actions cannot be implied. *Doe,* 145 F.Supp.2d at 1346–47 (citing *Hass,* 1986 WL 10154, *1). Therefore, courts cannot look to Florida law to decide the matter. *Id.* Thus, Stires cannot maintain an action for breach of contract or breach of contract of carriage and dismissal is warranted.

Furthermore, the warranty of seaworthiness does not apply to fare paying passengers. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1335 (11th Cir.1984) (citing *Gibboney v. Wright,* 517 F.2d 1054, 1059 (5th Cir.1975)). Neither will maritime law imply a warranty of seaworthiness. *Doe,* 145 F.Supp.2d at 1346–47 (citing *Hass,* 1986 WL 10154); *Jackson,* 203 F.Supp.2d at 1377–78. Hence, dismissal is appropriate.

## G. Liability under *Doe v. Celebrity Cruises* (count 7)

Carnival contends that count 7 is not a cause of action and is duplicative of other counts in Stires' Amended Complaint. Carnival is correct. Hence, dismissal is appropriate.

## H. Florida Deceptive and Unfair Trade Practices Act (count 8)

Carnival argues that Stires has failed to state a claim under the Florida "Deceptive and Unfair Trade Practices Act" ("FDUTPA"), Chapter 501, Part II, Florida Statutes because she has not properly alleged damages. FDUTPA provides that an aggrieved party may initiate a civil action against a party who has engaged in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Keech v. Yousef,* 815 So.2d 718, 719 (Fla. 5th DCA 2002), *appeal dismissed,* Table No. SC02–1611, 829 So.2d 918 (Fla. July 31, 2002), *reh'g denied,* (Oct. 21, 2002) (quoting Fla. Stat. § 501.204(1)). Under the statute, only a "consumer" may recover actual damages for unfair trade practices. *Kelly v. Nelson, Mullins, Riley & Scarborough, L.L.P.,* 15 Fla. L. Weekly Fed. D247, 2002 WL 598427, *8 (M.D.Fla. Mar.20, 2002) (citing Fla. Stat. § 501.211(2)). Section 501.204(2) clearly states that in construing what an unfair method of competition is or what constitutes an unfair or deceptive act or practice in the conduct of any trade or commerce, courts should give due consideration and great weight to the Federal Trade Commission's ("FTC") interpretations of the equivalent federal law. *Storer Communications, Inc. v. State, Dep't of Legal Affairs,* 591 So.2d 238, 240 (Fla. 4th DCA 1991). Additionally, the statute expressly provides that " 'trade or commerce' means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, where ever situ-

ated...." *Kelly*, 2002 WL 598427, *8 (citing Fla. Stat. § 501.203(8)).

■■■ If a complaint alleges that a business made an allegedly misleading advertisement by making an offer or promise which the advertiser did not intend to keep, the complaint properly alleges claims for violations of FDUPTA. *Izadi v. Machado (Gus) Ford, Inc.*, 550 So.2d 1135, 1140–41 (Fla. 3d DCA 1989) (citations omitted). Furthermore, as a general rule,

> the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. A notable exception to the rule may exist when the product is rendered valueless as a result of the defect—then the purchase price is the appropriate measure of actual damages.

*Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So.2d 311, 314 (Fla. 4th DCA 1998) (quoting *Rollins, Inc. v. Heller*, 454 So.2d 580, 584 (Fla. 3d DCA 1984) (internal citations omitted)).

Here, Carnival has not argued that Stires cannot maintain a claim for violations of FDUPTA. Rather, Carnival's only argument on the merits is that Stires has not sufficiently plead damages by alleging facts demonstrating that the value of the cruise taken by Stires was less than the market value of the cruise promised to Stires. Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b). *See, e.g., Patel v. Holiday Hospitality Franchising, Inc.*, 172 F.Supp.2d 821, 825 (N.D.Tex.2001); *Pecarina v. Tokai Corp.*, No. CUV,01–1655 ADM/AJB, 2002 WL 1023153, *8 (D.Minn. May 20, 2002); *see generally Steyr Daimler Puch of Am. v. A & A Bicycle Mart, Inc.*, 453 So.2d 1149 (Fla. 4th DCA 1984). *But see Publications Int'l, Ltd. v. Leapfrog Enters., Inc.*, No. 01C3876, 2002 WL 31426651, *6 (N.D.Ill. Oct.29, 2002); *Floorcoverings, Intern., Ltd v. Swan*, No. 00C1393, 2000 WL 528480, *5 (N.D.Ill. Apr.25, 2000). Stires' Amended Complaint alleges fraud in that she claims that she did not receive the cruise that was promised to her. Hence, her FDUTPA claim should be plead with particularity, and as plead, is insufficient.

However, Carnival's contention that Stires is not entitled to a jury trial on her FDUTPA claim is erroneous. Florida courts have allowed submission of FDUPTA claims to a jury. *See, e.g., 3B TV, Inc. v. State, Office of Atty. Gen.*, 794 So.2d 744, 748 (Fla. 1st DCA 2001); *Hamilton v. Palm Chevrolet–Oldsmobile, Inc.*, 388 So.2d 638, 639 (Fla. 2d DCA 1980); *In re Estate of Sanz v. Pershing Indus., Inc.*, 770 So.2d 1266, 1266 (Fla. 3d DCA 2000); *Stewart Agency, Inc. v. Lesueur*, 785 So.2d 1242, 1243 (Fla. 4th DCA 2001); *Specialty Insulation & Waterproofing v. Alliance Inv. Group, Inc.*, 824 So.2d 308 (Fla. 5th DCA 2002) (op. on mot. for reh'g and/or clarification).

## I. Punitive Damages (count 9)

■■■ Finally, Carnival asserts that punitive damages are not allowed under maritime law. Punitive damages are not available for negligence claims in admiralty cases. *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. On Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir.1997) ("Unless or until the United States Supreme Court should decide to add state remedies to the admiralty remedies for personal injury, personal injury claimants have no claim for nonpecuniary damages such as ..., punitive damages, except in exceptional circumstances such as willful failure to furnish maintenance and cure to

a seaman, intentional denial of a vessel owner to furnish a seaworthy vessel to a seaman" and *"in those very rare situations of intentional wrongdoing."*) (emphasis added); *Doe,* 145 F.Supp.2d at 1347; *see generally In re Horizon Cruises Litig.,* 101 F.Supp.2d 204, 211 (S.D.N.Y.2000) (discussing punitive damages in admiralty). "Punitive damages may be awarded in maritime tort actions where defendant's actions were intentional, deliberate or so wanton and reckless as to demonstrate a conscious disregard of the rights of others." *Muratore v. M/S Scotia Prince,* 845 F.2d 347, 354 (1st Cir.1988) (citations omitted). However, "[w]hen a principal has neither authorized nor ratified the conduct of her servant, the courts are split on whether to hold the principal liable for punitive damages." A majority of courts have awarded punitive damages against corporations or principals for the tortious acts of their agents regardless of approval or ratification. *Id.* (citations omitted). Accordingly, this Court concludes, like the courts in *Muratore* and *Doe,* that a principal cannot be held liable for punitive damages where it neither authorized nor ratified an employee's acts. *Doe,* 145 F.Supp.2d at 1347 (citing *Muratore,* 845 F.2d at 354). Therefore, as plead, plaintiff cannot recover punitive damages.

**J. Attorney's Fees**

▮▮▮ Likewise, Carnival appropriately argues that Stires cannot recover attorney's fees in this case. Under federal maritime law, a prevailing party is not entitled to attorney's fees in an admiralty case unless fees are statutorily or contractually authorized. *Coastal Fuels Mktg., Inc. v. Florida Exp. Shipping Co., Inc.,* 207 F.3d 1247, 1250 (11th Cir.2000) (citing *Galveston County Navigation Dist. No. 1 v. Hopson Towing Co., Inc.,* 92 F.3d 353, 356 (5th Cir.1996)); *Noritake Co., Inc. v. M/V Hellenic Champion,* 627 F.2d 724 (5th Cir.1980) (absent specific federal statutory authorization for an award of attorney's fees, the prevailing party is generally not entitled to those fees); *Doe,* 145 F.Supp.2d at 1348 (citing *Garan, Inc. v. M/V Aivik,* 907 F.Supp. 397, 399 (S.D.Fla.1995) (holding that federal maritime common law preempted state statute that permitted recovery of attorney's fees)). Although courts have increasingly applied state law as a supplement to the federal maritime law, such applications are only valid when federal statutory or common law is silent on the issue. *See, e.g., Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). The federal law regarding the award of attorney's fees in the maritime context is clear and directs each side to pay its own fees. *Garan,* 907 F.Supp. at 399. Stires has not demonstrated that a federal statute authorizes attorney's fees in this case, nor has she shown why one of the exceptions would apply to this case to allow the recovery of fees. Therefore, her request for attorney's fees is stricken.

## IV. CONCLUSION

For the foregoing reasons, it is therefore,

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (Doc. 29) is **GRANTED in part** and **DENIED in part** as follows:

1) Counts 6 & 7 of Plaintiff's Amended Complaint are DISMISSED with prejudice.

2) Counts 2, 3, 4, 5, & 8 of Plaintiff's Amended Complaint are DISMISSED without prejudice.

3) The allegations contained in count 1 that relate to the doctor's or nurse's negligence are DISMISSED with prejudice and the remainder of count 1 is DISMISSED without prejudice.

4) The Plaintiff's request for punitive damages (count 9) and attorney's fees are stricken.

5) The Plaintiff shall have twenty (20) days from the date of this order to file an amended complaint.

## ORDER ON MOTION TO ALTER OR AMEND

This Court has for its consideration Plaintiff's Motion to Alter or Amend the November 7, 2002 Dismissal Order to Include Certification of Legal Issues to U.S. Court of Appeals and memorandum of law (Docs. 39 & 40). The Court has carefully considered the Plaintiff's Motion and accompanying memorandum, and is otherwise fully advised in the premises.

The Court finds, pursuant to 28 U.S.C. § 1292(b), that this case does not involve a controlling question(s) of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the Court's November 7, 2002 Order will materially advance the ultimate termination of this litigation. Accordingly, it is

ORDERED AND ADJUDGED that Plaintiff's Motion (Doc. 39) is hereby DENIED.