Mary TAYLOR et al., Plaintiffs,

v.

**HOMECOMINGS FINANCIAL, LLC, Defendant.**

**Case No. 4:09cv292–RH/WCS.**

United States District Court,
N.D. Florida,
Tallahassee Division.

Aug. 20, 2010.

Catherine H. McElveen, Daniel Oakes Myers, Richardson Patrick Westbrook & Brickman LLC, Mount Pleasant, SC, Wil-

liam H. Garvin, III, Garvin Law Firm PA, Tallahassee, FL, for Plaintiffs.

Christian Watson Hancock, Bradley Arant Boult etc. LLP, Charlotte, NC, for Defendant.

### ORDER DISMISSING THE FIRST AMENDED COMPLAINT

ROBERT L. HINKLE, District Judge.

Each named plaintiff in this purported class action took out a loan secured by a residential mortgage. The mortgage note allowed the plaintiff, for up to ten years, to make monthly payments too small to cover the accruing interest, thus resulting in "negative amortization." But the plaintiff could also choose to make higher payments from the outset that were sufficient to cover the interest and amortize the principal. The decision whether to do so rested with the plaintiff. A loan of this kind is sometimes referred to as a "payment option" loan.

The plaintiffs have sued the mortgagee and the company that serviced the loans. The plaintiffs assert Florida state-law claims for breach of contract, for breach of the implied covenant of good faith and fair dealing, and for deceptive or unfair trade practices. The nub of the claims is that the relevant documents—the note and attendant disclosures—failed to adequately disclose that if a plaintiff made the minimum required payment at the outset, the payment would not cover the interest and so the principal balance would increase. But the documents were chock full of disclosures about this possibility. The documents fully disclosed precisely how the note worked in terms that were readily understandable and that met the requirements of the federal Truth in Lending Act.

Because the first amended complaint fails to allege facts showing a breach of contract or a failure to fully and properly disclose, I grant the mortgagee's motion to dismiss. I grant the servicing company's motion for the same reason and because the first amended complaint fails to allege that it breached a contract or had a role in the challenged disclosures.

### I. The Facts

The named plaintiffs are Mary Taylor and Farrell L. Stewart. The defendants are the mortgagee, Homecomings Financial, LLC, and the servicing company, Aurora Loan Services, LLC.

Three relevant documents attended each plaintiff's transaction. For convenience, this order refers only to Ms. Taylor's documents; Mr. Stewart's were substantively identical.

The note, ECF No. 8–2, was the actual contract setting out the plaintiff's obligation to repay the funds the plaintiff borrowed. The federal truth-in-lending disclosure statement, ECF No. 8–3, set out the disclosures required by federal law, including such things as the annual percentage rate. The program disclosure explained the operation of the payment-option loan, tempered by the statement that it was "intended for reference purposes only" and that only the actual loan documents "establish your rights and obligations under the loan plan." ECF No. 8–4 at 4.

Ms. Taylor's note included these statements:

[3(B)] Each of my initial Minimum Payments will be in the amount of U.S. $568.97 until a new Minimum Payment is required.... If my Minimum Payment is not sufficient to cover the interest due under this Note, the difference will be added to my Principal

amount.... My initial Minimum Payment may not be sufficient to cover the interest due.

....

[3(C)] My Minimum Payment may change ....

....

[3(D)] The Minimum Payment applies only to the Principal and interest payment and does not apply to any escrow payments [that may be required].

....

[3(E)] My monthly payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to any unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month....

....

[3(F)] My unpaid Principal can never exceed a maximum amount equal to 115% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid Principal ... could cause my unpaid Principal to exceed that maximum amount. In that event ... I will ... pay a new monthly payment in an amount not less that the amount that would pay the interest portion of the monthly payment

....

[3(H)] Each month the Note Hoder may provide me with up to three additional payment options (in addition to the Minimum Payment) that are equal to or greater than the Minimum Payment, which are called "Payment Options." [These are the interest-only amount; the amount of principal and interest that would fully amortize the loan 30 years after the first payment was due; and the amount of principal and interest that would fully amortize the loan 15 years after the first payment was due.]

ECF No. 8–2 at 3–4.

The truth-in-lending disclosure statement accurately set out the annual percentage rate, finance charge, amount financed, total of payments, and payment schedule, all as required by the Truth in Lending Act and its implementing regulations. *See* ECF No. 8–3.

The program disclosure included these statements:

If you pay only the minimum monthly payment, and that amount is not sufficient to cover the interest due, the difference will be added to your principal amount. This is called "negative amortization." ...

....

... Your "Minimum Payment" is the minimum amount we will accept for your monthly payment. Your initial Minimum Payment is not based on the initial interest rate. The initial Minimum Payment is less than the amount required to repay the loan (principal and interest) in substantially equal monthly payments over the loan term at the initial interest rate. Your initial Minimum Payment

amount may be in effect for up to five years. Your initial Minimum Payment may not be sufficient to cover the interest due....

. . . .

... If you pay only the monthly Minimum Payment, the amount may not be sufficient to cover the interest due on your loan. For each month that your monthly Minimum Payment is less than the interest due on your loan, we will subtract the amount of your monthly payment from the amount of interest due on your loan and will add the difference to your unpaid principal. **This means that the principal balance of your loan could increase.** This is known as negative amortization. The unpaid principal balance of your loan can never exceed 115% ... of the original amount borrowed. If your outstanding principal balance reaches that limit, we will immediately increase your monthly Minimum Payment to an amount sufficient to pay the interest portion of the monthly payment....

... We may provide you with up to three (3) additional payment options that are equal to or great than your Minimum Payment, which are called "Payment Options." [These are the interest-only amount; the amount of principal and interest that would fully amortize the loan 30 years after the first payment was due; and the amount of principal and interest that would fully amortize the loan 15 years after the first payment was due.]

. . . .

On a $10,000 thirty year loan originated at an initial interest rate of 7.375% in effect in October, 2006, the maximum amount that the interest rate can rise under this program is to 9.95% (the lifetime interest rate cap). The monthly minimum payment can rise from an initial payment for the first five years of the loan of $36.96* * to a maximum of $110.60 in the eleventh year.

ECF No. 8–4 at 2–4 (emphasis in original). A footnote explained the hypothetical $36.96 initial payment:

This payment is not based on the initial interest rate. This payment is less than the amount required to repay the loan (principal and interest) in substantially equal monthly payments over the loan term at the initial interest rate. That payment would be $69.07.

*Id.* at 4. The program disclosure continued:

**Important Information about Negative Amortization**

- Negative amortization means the mortgage balance is increasing. This occurs whenever your monthly mortgage payments are not large enough to pay all of the interest due on your mortgage.

- Because payment caps limit only the amount of payment increases, and not interest rate increases, your monthly payments sometimes may not cover all of the interest due on your loan. This means that the interest shortage in your payment is automatically added to your unpaid principal balance, and interest may be charged on that amount. However, the unpaid principal balance of your loan can never exceed 115% (110% in New York) of the original amount borrowed. You may owe more later in the loan term than you did at the start.

- If you have any questions, be sure to ask us about negative amortization to

understand how it may apply to your loan.

*Id.* at 4 (emphasis in original).

## II. The Standards on a Motion To Dismiss

The Supreme Court recently summarized the standards that apply to most complaints:

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. [544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)] (quoting *Conley v. Gibson,* 355 U.S. 41, 47[, 78 S.Ct. 99, 2 L.Ed.2d 80] (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp., supra,* at [555, 127 S.Ct. 1955] (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1[, 122 S.Ct. 992, 152 L.Ed.2d 1] (2002); *Neitzke v. Williams,* 490 U.S. 319, 327[, 109 S.Ct. 1827, 104 L.Ed.2d 338] (1989); *Scheuer v. Rhodes,* 416 U.S. 232, 236[, 94 S.Ct. 1683, 40 L.Ed.2d 90] (1974)).

*Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). The court must accept the complaint's allegations as true "even if [the allegations are] doubtful in fact." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

Under Rule 8(a)(2), a complaint thus "does not need detailed factual allegations." *Id.* Nor must a complaint allege with precision all the elements of a cause of action. *See Swierkiewicz,* 534 U.S. at 514–15, 122 S.Ct. 992 (rejecting the assertion that a Title VII complaint could be dismissed for failure to plead all the elements of a prima facie case).

But neither is a conclusory recitation of the elements of a cause of action alone sufficient. A complaint must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. A complaint must include "allegations plausibly suggesting (not merely consistent with)" the plaintiff's entitlement to relief. *Id.* at 545, 127 S.Ct. 1955. The complaint must set forth facts—not mere labels or conclusions—that "render plaintiffs' entitlement to relief plausible." *Id.* at 569 n. 14, 127 S.Ct. 1955.

A district court thus should grant a motion to dismiss unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). This is so because

the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, *supported by mere conclusory statements,* do not suffice.... [Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff *armed with nothing more than conclusions.*

*Id.* at 1949–50 (emphasis added).

When a complaint alleges fraud or mistake, the pleading standard is more exact-

ing: the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). Florida district courts have disagreed on whether the 9(b) standard applies to a FDUTPA claim. *Compare Stires v. Carnival Corp.,* 243 F.Supp.2d 1313, 1322 (M.D.Fla.2002) ("Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b)."), *with Siever v. BWGaskets, Inc.,* No. 6:08-cv–1388–Orl–19GJK, 2009 WL 528624, at *3 (M.D.Fla. Mar. 2, 2009) (applying Rule 8(a)(2) pleading standards because Rule 9(b) only applies to FDUTPA claims "grounded in fraud"), *and State of Fla., Office of Attorney Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.,* 420 F.Supp.2d 1288, 1310–11 (S.D.Fla.2005) (concluding that compliance with Rule 9(b) was not required because FDUTPA plaintiffs did not need to prove the elements of fraud). The issue does not affect the outcome here.

### III. Breach of Contract

█ The plaintiffs assert that the defendants breached the contract by failing to apply at least a portion of each monthly payment to principal. The claim fails because the contract did not require a portion of each payment to be applied to principal and because it would make no difference anyway.

The contract—that is, the note—repeatedly and unmistakably says that a payment may not be sufficient to cover interest and that the deficiency will be added to the note's principal. Thus the note's section 3(B) says that if a payment is not sufficient to cover the interest due, "the difference will be added to my Principal amount." Section 3(E) explains the calculation, saying that if a

monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to any unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. . . .

ECF No. 8–2 at 4. The math could perhaps have been explained more clearly, but this was easily clear enough to establish the terms of the contract.

In asserting the contrary, the plaintiffs rely on this statement in the note's section 3(D):

The Minimum Payment applies only to the Principal and interest payment and does not apply to any escrow payments [that may be required].

*Id.* at 4. The point of the sentence is clear and unobjectionable: the note sets out a "minimum payment," which is the minimum amount the borrower must pay on the note, but any required escrow payment—such as for taxes or insurance—is extra. The sentence does not say that a minimum payment will always be enough to pay the interest, or that a portion of a minimum payment will always be applied to principal, even if the payment is insufficient to cover the interest. The sentence does not countermand the other plain provisions of the note.

And it would not matter anyway. If, for example, a loan had a principal balance of $10,000 with monthly interest of $50, and if a borrower made a minimum payment of $40, then applying the payment to interest—as required under the terms of Ms. Taylor's note—would result in a new balance of $10,010, calculated as $10,000 + ($50 − $40). If, on the other hand, the

$40 payment was applied $25 to interest and $15 to principal, the new balance would still be $10,010, now calculated as $10,000 − $15 + ($50 − $25). Either way, the principal balance and the next month's interest would be the same.

To be sure, whether a payment was applied to interest or principal would make a difference if further interest accrued only on principal, not on interest. But the note clearly states that interest will accrue not only on principal but also on the amount of any interest that is not covered by a monthly payment. There is not the slightest contrary suggestion in the note or in any attendant disclosure.

In short, the plaintiffs have failed to state a claim for breach of contract.

## IV. The Covenant of Good Faith and Fair Dealing

■■■ Under Florida law, an implied covenant of good faith and fair dealing is a part of every contract. But the covenant does not override a contract's express terms. *See, e.g., Ernie Haire Ford, Inc. v. Ford Motor Co.,* 260 F.3d 1285, 1291 (11th Cir.2001); *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1316–17 (11th Cir.1999); *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290, 1314 (11th Cir.1998) ("The good faith requirement does not exist 'in the air.' Rather, it attaches only to the performance of a specific contractual obligation." (quoting *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.,* 710 So.2d 573, 575 (Fla. 4th DCA 1998))). The conclusion that, at least based on the first amended complaint's allegations, the defendants have followed—not breached— the plaintiffs's contracts necessarily indicates that the defendants also have not violated the implied covenant of good faith and fair dealing.

## V. The Deceptive and Unfair Trade Practices Act

■■■ The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") creates a private right of action in favor of a person who is injured by a violation of the act. *See* Fla. Stat. § 501.211. A violation "may be based upon" any statute or rule that proscribes "unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices," any "standard[ ] of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts," or any rule adopted under the Federal Trade Commission Act. § 501.203(3). At least in some circumstances, a FDUTPA violation thus may be based upon the federal Truth in Lending Act, a rule adopted under that act by the Board of Governors of the Federal Reserve System, or a published interpretation of that act by the Federal Reserve System's Division of Consumer and Community Affairs. The plaintiffs invoke these authorities here.

■■■ The Truth in Lending Act and its implementing regulations require detailed and precise disclosures on such things as a loan's annual percentage rate, total finance charge, amount financed, and total of payments. Setting these out is easy enough for a loan with a fixed term, fixed interest rate, and fixed monthly payment. For a loan with an adjustable interest rate and various payment options, it is not as easy. As an initial matter, one could design a system that required an almost infinite variety of disclosures for loans of this kind. But an important goal of the Truth in Lending Act is to allow a consumer to shop intelligently for a loan—to compare one proposed loan to another based on disclosures cast in a consistent manner. A lender must calculate the annual percentage

rate, total finance charge, amount financed, and total of payments precisely as the statute and regulations say it must.

■ Homecomings provided each plaintiff a Truth in Lending disclosure statement setting out the required amounts. Homecomings says the statements complied to the letter with the applicable requirements. The plaintiffs have challenged none of the calculations and have alleged no facts suggesting that the disclosure statements were inaccurate in any respect. As a matter of Florida law—if not also federal law—Homecomings cannot be held liable for providing a disclosure statement with calculations that conform with federal law. *See* Fla. Stat. § 501.212(1) (stating that FDUTPA does not apply to an "act or practice required or specifically permitted by federal or state law").

■ Still, it is not always enough for a lender to set out the required amounts. A lender must accurately disclose the nature of a proposed loan. Thus, for example, a lender must accurately inform the borrower if a payment-option loan will or at least may result in negative amortization. A Division of Consumer and Community Affairs staff interpretation confirms the requirement:

A creditor must disclose, where applicable, the possibility of negative amortization. For example, the disclosure might state, "If any of your payments is not sufficient to cover the interest due, the difference will be added to your loan amount." Loans that provide for more than one way to trigger negative amortization are separate variable-rate programs requiring separate disclosures. (See the commentary to § 226.19(b)(2) for a discussion on the definition of a variable-rate loan program and the format for disclosure.) If a consumer is given the option to cap monthly payments that may result in negative amortization, the creditor must fully disclose the rules relating to the option, including the effects of exercising the option (such as negative amortization will occur and the principal loan balance will increase)....

12 C.F.R. pt. 226 supp. I, cmt. 19(b)(2)(vii).2.

The plaintiffs say Homecomings violated this standard by indicating in the note and program disclosure that negative amortization was possible but failing to state explicitly that if a plaintiff initially made only the minimum required payment, negative amortization was a certainty.

The truth is this. At the outset of the loan, a plaintiff had the option to make a below-interest minimum payment. The plaintiff also had an option to make a payment that covered the interest or both covered the interest and paid down the principal. It was likely—both sides surely knew it—that the plaintiff would take the below-interest option, at least for a time. And eventually, starting in the eleventh year if not sooner, the plaintiff would be required to pay the full interest and some of the principal.

Given these facts, it was likely but not certain that some payments would result in negative amortization. It was certain that other payments—if made as required—would cover the interest and thus would *not* result in negative amortization. A statement that negative amortization was certain would not have been accurate. Instead, Homecomings' statement in section 3(E) of the note was scrupulously accurate: a monthly payment "could be

less than or greater than the amount of the interest" and, if less than the interest, the note holder "will add the difference to any unpaid Principal." ECF No. 8–2 at 4.

The note included another statement, though, that was not as forthcoming. In section 3(B), the note said:

> Each of my initial Minimum Payments will be in the amount of U.S. $568.97 until a new Minimum Payment is required. . . . *If* my Minimum Payment is not sufficient to cover the interest due under this Note, the difference will be added to my Principal amount. . . . My initial Minimum Payment *may* not be sufficient to cover the interest due.

ECF No. 8–2 at 3 (emphasis added). The statement is literally true, just as it is literally true to say that if the Sun rises in the east, it may set in the west. But by using "if" to refer to a condition that is certain, and "may" to refer to a consequence that is equally certain, the statement, viewed in isolation, could be deemed misleading.

The program disclosure document, like the note, included statements accurately setting out the possibility of negative amortization, but it also included this less-forthcoming statement: "Your initial Minimum Payment *may* not be sufficient to cover the interest due." ECF No. 8–4 at 2 (emphasis added). Like the analogous statement in the note, this statement, viewed in isolation, could be deemed misleading.

But the statements cannot properly be viewed only in isolation. They were, instead, parts of a note and program disclosure that repeatedly and accurately emphasized the possibility and import of negative amortization. Nobody could have read these documents without under-

standing full well the essence of the transaction: the plaintiff would have the option of making below-interest payments at the outset, this would increase the principal by as much as 15%, the interest rate and required payment would change after five years, and eventually the plaintiff would have to pay the full principal with interest. Lower payments now mean higher payments later. And interest keeps running. It is not a difficult concept.

To be sure, the disclosures would have been better had they included a statement like this: "The initial minimum payment is less than the interest, and if you make the initial minimum payment, the principal balance will increase." This is closer to the example of an appropriate disclosure included in the applicable staff interpretation, which says that if a consumer is given an option to make a payment that may result in negative amortization, "the creditor must fully disclose the rules relating to the option, including the effects of exercising the option (such as negative amortization will occur and the principal loan balance will increase)." 12 C.F.R. pt. 226 supp. I, cmt. 19(b)(2)(vii).2. The plaintiffs focus on this disclosure as drafted by the staff—"negative amortization *will* occur and the principal loan balance *will* increase"—as if the staff interpretation requires those very words to be included in a disclosure. But the staff's draft is just an *example* of an acceptable disclosure. Thus the staff interpretation says the creditor "must" disclose the rules governing, and the effect of, a below-interest payment, and Homecomings did. But the staff interpretation does *not* say that the creditor "must" make a disclosure in the form the staff drafted. Instead, the staff interpretation uses "[s]uch as" to introduce its draft, plainly indicating that the draft is

simply an example. In arguing the contrary, the plaintiffs read the words "such as" out of the staff interpretation.

On balance, the defendants' actions as alleged in the first amended complaint were not deceptive or unfair. The first amended complaint fails to state a claim under FDUTPA.

This conclusion rests on a proper analysis of FDUTPA and the relevant documents—the note, the TILA disclosure statement, and the program disclosure—all as set out above. The limited case law in the area affects the analysis only a little. There are district-court decisions on both sides of the question whether a borrower has stated a claim based on a similar set of disclosures for a similar kind of loan. But the parties have cited no such case, and I am aware of none, arising under FDUTPA. Nor have they cited a Supreme Court or Eleventh Circuit decision addressing the required disclosures for a loan of this kind.

The district-court decisions that *reject* challenges to similar disclosures provide some support for this order. *See Appling v. Wachovia Mortg., FSB*, No. C 10–01900 JF (PVT), 2010 WL 2354138, at *7 (N.D.Cal. June 9, 2010) (viewing a mortgagee's disclosures as a whole and concluding that they adequately disclosed the certainty of negative amortization if the borrower exercised the option to make minimum, below-interest payments); *Carroll v. Homecomings Fin. LLC*, CV 07–3775–AHS (FMOx), slip op. at 3 (C.D.Cal. Mar. 23, 2009) (tentatively upholding a statement that negative amortization was a possibility, even though it was a certainty, because the disclosure was technically accurate). Other district courts, though, have *upheld* challenges to similar disclosures. *See, e.g., Nkengfack v. Homecom-*

*ings Fin., LLC,* Civil No. RDB 08–2746, 2009 WL 1663533, at *2–3 (D.Md. June 15, 2009) (collecting authorities); *Mincey v. World Sav. Bank, FSB,* 614 F.Supp.2d 610, 635–38 (D.S.C.2008). The claims in these cases did not arise under FDUTPA, and to the extent they could nonetheless be read to suggest that the result here should be different, I simply disagree.

Two final points deserve mention. First, the plaintiffs make vague and conclusory arguments that the defendants misrepresented the nature of the loans more broadly and that the plaintiffs were misled. But the plaintiffs point to nothing Homecomings said or that they relied upon beyond the actual documents addressed in this order. There are no other allegations of deceptive or unfair practices that meet the pleading standards of Rule 8(a)(2), let alone the particularity requirement of Rule 9(b).

Second, loans of this kind raise issues more substantial than those addressed in this order. One could argue both sides of the question whether a consumer transaction like this should be legal at all. One could argue both sides of the question whether the required disclosures should include a warning that real-estate values may plummet—often the biggest practical risk in a negative-amortization transaction—or should include calculations based on different assumptions about interest rates or minimum payments. One could argue both sides of the question whether a lender initiating a loan of this kind should have more skin in the game. But these arguments belong in Congress. As things now stand, a transaction of this kind is legal, so long as the lender makes adequate disclosures, as Homecomings did.

The FDUTPA claim must be dismissed.

## VI. Aurora

The claims against Aurora fail on another ground as well. Whatever might be

said of the allegations against Homecomings, there are insufficient allegations that *Aurora* breached a contract or engaged in a deceptive or unfair practice. If Aurora had any involvement with the disclosures made to the plaintiffs before they took out the loans, the first amended complaint does not allege it. And if Aurora is anything other than the agent for a disclosed principal servicing a contract according to its terms, the first amended complaint does not allege it.

### VII. Conclusion

For these reasons,

IT IS ORDERED:

1. The motions to dismiss, ECF Nos. 21 & 22, are GRANTED. The first amended complaint is dismissed. I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

2. The plaintiffs are granted leave to file a second amended complaint within 21 days but need not do so to preserve their claim that the first amended complaint adequately states a claim on which relief can be granted. If the plaintiffs do not file a second amended complaint, a judgment will be entered dismissing the case with prejudice.

3. Aurora's request for judicial notice, ECF No. 23, is denied without prejudice as moot.