**Jane DOE, Plaintiff,**

v.

**CELEBRITY CRUISES, INC., et al., Defendants.**

**No. 00–2523–CIV–MARTINEZ.**

United States District Court, S.D. Florida, Miami Division.

Sept. 23, 2003.

---

Gerhardt Adam Schreiber, Mary Lou Rodon–Alvarez, Schreiber Rodon–Alvarez, Coral Gables, FL, George J. Tsimis, Stephan Skoufalos, Richard M. Ziccardi, Daniel F. Paige, Skoufalos Llorca & Ziccardi, Stamford, CT, for plaintiff.

Ralph O. Anderson, Hicks & Kneale, Hollywood, CA, Carol Flynn Finkelhoffe, Jeffrey Bradford Maltzman, Darren Wayne Friedman, Kay Rose & Maltzman, Miami, FL, for defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

MARTINEZ, District Judge.

THIS CAUSE came before the Court upon the various post-verdict motions filed, including: Defendants' Motion for Judgment as a Matter of Law (D.E. No. 225–1), Defendants' Motion for a New Trial (D.E. No. 226–1), and Defendants' Motion for Remittitur (D.E. No. 227–1), filed on *December 12, 2002.* The Court held argument on the fully-briefed motions and has ordered supplemental briefing, which has been completed. The Court has carefully considered the case file and is sufficiently advised. For the reasons set forth below, the Court shall grant Defendants' Motion for Judgment as a Matter of Law.

### I. BACKGROUND

Plaintiff, Jane Doe, initiated her case on July 14, 2000 (D.E. No. 1–1). As the parties stipulated in their Joint Pretrial Stipulation ("JPTS") (D.E. No. 159–1):

This case involves a female passenger [Jane Doe] aboard a cruise ship who alleges to have been sexually assaulted, raped and battered by a male crewmember [sic] [Baris Aydin] while ashore in Bermuda during a roundtrip [sic] cruise from New York to Bermuda. The plaintiff alleges that as a result of the rape she has suffered damages resulting from emotional, psychological, and physical injuries. The Defendants allege the encounter was consensual and deny that any sexual assault, rape or battery occurred.

JPTS at 1. Jane Doe originally sued the following Defendants: Celebrity Cruises, Inc. ("Celebrity")(the ship operator), Zenith Shipping Corporation ("Zenith")(the ship owner), Apollo Ship Chandlers Corporation ("Apollo")(provides services to the catering company), Baris Aydin (the crew member), and M/V Zenith, *in rem* (the vessel)(see Complaint, D.E. No. 1–1). Doe filed a nine-count complaint, which alleged breach of contract of carriage; negligence; battery; intentional infliction of emotional distress; negligent infliction of emotional distress; and breach of contract.

Defendants, Celebrity, Apollo, and Zenith, filed motions to dismiss (D.E.Nos.8–1, 27–1). Defendant, Baris Aydin, was never served with a summons and a copy of the complaint (see generally the docket). The Honorable Alan S. Gold granted in part and denied in part Defendants' motions

(D.E. No. 29–1). Judge Gold dismissed with prejudice Doe's allegations regarding: breach of contract; duty to investigate; and the ship doctor's negligence. *Id.* With regard to the remaining allegations, Judge Gold, as is discussed more fully below, held vicarious liability can be imposed upon a common carrier for Aydin's tortious conduct, which occurred outside the scope of his employment. *Id.* Judge Gold noted Doe's Complaint failed to allege the claimed intentional torts occurred during Aydin's contractual period; therefore, Judge Gold dismissed those counts without prejudice. *Id.*

Doe filed her Amended Complaint (D.E. No. 33–1), which was followed by a motion to dismiss by Defendants, Celebrity, Apollo, and Zenith (D.E. No. 36–1). Prior to the Court ruling on the motion to dismiss, Doe filed her Second Amended Complaint (D.E. No. 84–1), which added Celebrity Catering Services Partnership ("CCSP")(the catering company) as a Defendant. Judge Gold subsequently granted in part and denied in part Defendants' motion to dismiss by striking two of Doe's negligence allegations and leaving the remaining allegations pending (D.E. No. 85–1).

Doe filed her Third Amended Complaint on August 2, 2001 (D.E. No. 87–1), which was the operative complaint at the time of trial. This cause was subsequently reassigned to the undersigned on September 24, 2002 (D.E. No. 151–1). On October 18, 2002, the parties submitted their Joint Pretrial Statement (D.E. No. 159–1), which stated: "For the purposes of the forthcoming trial, the parties will try only those issues relating to the strict (vicarious) liability articulated and ordered by Judge Gold in his Order dated February 26, 2001." Therefore, the claims at issue for the trial were Doe's claims of strict liability against the Defendants for the alleged intentional torts by Aydin for intentional infliction of emotional distress, sexual assault, and sexual battery.

A jury trial was held in this matter on November 18, 2002 through November 22, 2002. The Court granted Defendants' motion for judgment as a matter of law on Doe's intentional infliction of emotional distress claim and denied the motion for a judgment as a matter of law on the claims of sexual assault and sexual battery. The claims of sexual assault and battery were submitted to the jury (see generally, Jury Instructions, D.E. No. 218–1). The jury found Aydin did not sexually assault Doe; however, the jury found Aydin did commit a sexual battery upon Doe and awarded Doe $1,000,000.00, attributing 25% responsibility to each of the Defendants, Celebrity, Zenith, Apollo, and CCSP (D.E. No. 219–1).

The Defendants sought re-submission to the jury, arguing the verdict was inconsistent, which this Court denied (D.E. No. 221–1) after hearing argument and reviewing the legal memoranda submitted by the parties (D.E.Nos.210–1, 220–1). The Court entered judgment on November 27, 2002 (D.E. No. 222–1).

Defendants filed their post-verdict motions on December 12, 2002 (D.E.Nos.225–1, 226–1, 227–1). The Court heard argument on the post-verdict motions on March 18, 2003. During the hearing and by subsequent Order, the Court ordered supplemental briefing (D.E.253–1). The parties filed their additional legal memoranda, which may be found at D.E. Nos. 256–1 and 257–1.

## II. STANDARD OF REVIEW

 Under a renewed motion for judgment as a matter of law, under Fed. R.Civ.P. 50(b), the Court must review the motion under the standard of Fed.R.Civ.P. 50(a). Under Fed.R.Civ.P. 50(a):

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against the party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

The Court must view the evidence in the light most favorable to the party opposing the motion. *See e.g., Reynolds v. CLP Corp.,* 812 F.2d 671, 674 (11th Cir.1987). The Court does not weigh the conflicting evidence or make credibility decisions. *Id.* "The trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). In this case, Doe has not established she is entitled to judgment under the governing law.

### III. ANALYSIS

Defendants' seek judgment as a matter of law under various theories. Defendants' claim Judge Gold's opinion that held Defendants could be held vicariously liable for the intentional torts of an employee outside the scope of his employment is incorrect, and Defendants are entitled to judgment as a matter of law based upon Plaintiff's inconsistent prior sworn testimony (see motion, D.E. No. 225–1).

■ With regard to Judge Gold's opinion, the Court is bound by the law-of-the-case doctrine. The Supreme Court described the law-of-the-case doctrine as follows:

A court has the power to revisit prior decisions of its own court or of a coordinate court in any circumstance, although as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was "clearly erroneous and would work a manifest injustice."

*Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988). The Eleventh Circuit has clarified: "Courts must rarely invoke the 'clear error' exception, less the exception swallow the rule." *Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1370 (11th Cir.2003). In this case, the Court does not find Judge Gold's opinion to be clear error; therefore, this opinion shall not disturb Judge Gold's holding.

■ With regard to Defendants' second argument about Plaintiff's inconsistent testimony, this Court shall not make a credibility determination, because, under the above-discussed legal standard, the Court is required to determine if there is a sufficient evidentiary basis for the jury's determination. Fed.R.Civ.P. 50(a). In this case, the jury reasonably could have concluded Jane Doe was more credible than Aydin, and the verdict reflects such finding.

In reviewing Defendants' motions, the Court, however, became concerned with the evidence as it related to Judge Gold's opinion. Judge Gold, in his opinion issued on February 26, 2001, posed the issue: "can vicarious liability be imposed for Aydin's tortious conduct?" (D.E. No. 29–1 at 5).[1] This issue sets forth two distinct questions: 1) is the proper standard strict liability or negligence; and 2) can the employer be held strictly liable for the acts done outside the employee's scope of em-

---

1. Judge Gold's opinion is published at *Doe v. Celebrity Cruises, et al.,* 145 F.Supp.2d 1337 (S.D.Fla.2001); however, the Court shall cite to the page numbers of the opinion located at D.E. No. 29–1 for consistency.

ployment. After an analysis of the relevant case law, Judge Gold found the circuits are split on whether the relevant standard to impose liability is strict liability or negligence. The Court of Appeals for the Eleventh Circuit has not yet had the opportunity to address the issue; therefore, Judge Gold found "if it were faced with this issue, the Eleventh Circuit would likely adopt the approach of the First, Fifth, and Ninth Circuits," which have determined the relevant standard is strict liability. *Id.* at 5–9.

With regard to the issue of whether an employer may be held strictly liable for the acts outside the scope of his employment, Judge Gold again found the circuits are split. *Id.* at 9–12. Thus, Judge Gold applied Florida law. *Id.* at 12–13 (*citing Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.,* 207 F.3d 1247, 1251 (11th Cir.2000)) (where there is no uniform, binding federal law, application of state law is proper). Accordingly, Judge Gold held:

> The general rule is that the assault and rape of a plaintiff by the defendant's employee is considered to be outside the scope of employment, and therefore, is insufficient to impose vicarious liability on the employer. However, like other states, Florida recognizes an exception for common carriers.... The court [in *Nazareth v. Herndon Ambulance Svc., Inc.,* 467 So.2d 1076, 1078 (Fla.App.5th Dist.1985)] explained that an "established exception to the general rule" [of nonliability] is where the employer is a common carrier for hire to the public, and the tort or attack is by an employee

upon a passenger while the contract for transport is being accomplished.

*Id.* at 12 (citations omitted). In summary, Judge Gold held a common carrier[2] may be held strictly liable for its' employee's intentional torts that are committed outside the scope of employment.

 Title 46, section 1702(6) of the United States Code defines a common carrier as "a person holding itself out to the general public to provide transportation by water of passengers or cargo between the United States and a foreign country for compensation." Courts recognized the duty imposed upon the carrier in such a relationship: "[i]t is elemental that a contract of a common carrier to transport a passenger to a given destination imposes on the carrier an obligation to transport the passenger to this destination in a reasonably safe manner." *See Heredia v. Safeway Trails, Inc.,* 369 So.2d 418, 420 (Fla.App.3d Dist.1979), *cert. den.,* 378 So.2d 348 (Fla.1979). Common carriers by sea include: "ferries, ocean liners, or cruise ships." *Shultz v. Florida Keys Dive Center, Inc.,* 224 F.3d 1269, 1273 (2000).

 In reviewing the post-verdict motions, the Court became concerned *sua sponte* with whether Plaintiff had shown the Defendants were common carriers who employed Aydin, thereby properly imposing liability for Aydin's tortious act of sexual battery, as found by the jury. Although neither party *at any time* raised this issue, the Court under Fed.R.Civ.P. 50(b) shall consider it. Under Fed.R.Civ.P. 50(a), as is quoted above, the

---

**2.** Judge Gold's opinion regarding the proper standard of care (negligence or strict liability) refers to the "ship operator" (page 5); "ship owner" (pages 5, 6, 7, 8, 9, and 10); and "common carrier" or "maritime carrier" (pages 6, 7, 8, and 11). In cases like this one, where the ship operator and ship owner are

not the same entity, the issue of liability could turn on the precise definition of common carrier and whether such definition included both the operator and owner. In the case at hand, however, the distinction is irrelevant, as is discussed below.

Court may "grant a motion for judgment as a matter of law against that party with respect to a claim or defense *that cannot under the controlling law be maintained*" (emphasis added). Plaintiff must show a Defendant is both: 1) a common carrier, and 2) Aydin's employer in order for the Court to impose liability for Aydin's act of sexual battery, as found by the jury. Therefore, the Court ordered the parties to file supplemental memoranda of law on the issue.[3] The Court shall discuss the status of each Defendant in turn.

## A. Celebrity Cruises

■ The parties, in their Joint Pretrial Stipulation, agreed as to the status of Celebrity. The parties stipulated: "At all relevant times, Celebrity Cruises, Inc. ('Celebrity') was and is a foreign corporation which [sic] maintains its principal place of business in Miami, Florida. *Celebrity is the operator of the cruise vessel*" (JPTS at ¶ III(B))(emphasis added). Also, Doe's ticket, which was offered as Plaintiff's Exhibit No. 1 at trial (D.E. No. 231–1, p. 3, L.10–21) and is attached to her Third Amended Complaint (D.E. No. 89–1), bears the name of Celebrity. The evidence is sufficient to show Celebrity is a common carrier.

However, Celebrity is not Aydin's employer. The parties further stipulated: "CCSP [Celebrity Catering] employed Baris Aydin ('Aydin') at the time of the alleged incident" (JPTS at ¶ III(E)). In further support of the proposition that Celebrity is not Aydin's employer, Aydin offered the following testimony at trial:

Question [by Defendants' counsel]: Do you recall the name of the company that screened you and recommended you for the job on the Celebrity ship?

Answer [by Aydin]: You mean where I was working as a reference?

Q: No. Do you know the name of [Apollo]?[4]

A: Yes.

Q: Was that your actual employer on the ship?

A: Yes.

Q: Were you actually employed by Celebrity Cruise Lines or you just worked on their vessel?

A: I worked on their vessel.

(Aydin Direct Examination, D.E. No. 224–1, pp. 24, L. 19 through p. 25, L. 3). On cross examination, Plaintiff's counsel solicited the following exchange:

Q [by Plaintiff's counsel]: You worked on the Zenith Cruise Ship from approximately 1997 to 1999; is that correct?

A [by Aydin]: Yes, sir.

Q: Who operates that cruise ship?

A: Celebrity Cruise Line.

(Aydin Cross Examination, D.E. No. 224–1, p. 95, L. 15 through L. 19). This is the extent of the evidence before the Court regarding which entity is Aydin's employer. Therefore, although Celebrity may be a common carrier, it is not Aydin's employer, as evidenced by the parties' stipulation and the trial testimony. Therefore, there is no basis, from the evidence before the Court, under which this Court may hold Celebrity strictly liable for Aydin's tortious conduct.

---

**3.** Plaintiff's supplemental memorandum of law failed to assist the Court in reaching its determination (D.E. No. 256–1). Doe argues the Court is bound by Judge Gold's ruling and the parties' agreement in the JPTS to try the case according to Judge Gold's opinion. The Court agrees. However, it is the *application* of such ruling the Court must decide, and Doe failed to address the issue with which the Court is concerned.

**4.** Although the transcript reads "Paula" the reference is properly to Defendant "Apollo."

## B. Zenith Shipping Corporation

█ The parties stipulated Zenith "is a foreign corporation, organized and existing under the laws of Liberia, *which owns the vessel M/V Zenith*" (JPTS at ¶ III(C))(emphasis added). The record does not reflect any further evidence regarding Zenith for the Court to determine whether Zenith is a common carrier.

However, as discussed above, Zenith is not Aydin's employer. Accordingly, under the evidence before the Court, Zenith cannot be held strictly liable for Aydin's tortious conduct.

## C. Apollo Ship Chandlers, Inc.

█ Apollo, as was stipulated by the parties, "is a domestic corporation which [sic] maintains its principal place of business in Miami, Florida, and *provides services to Celebrity Catering Services Partnership*" (JPTS at ¶ III(D))(emphasis added). There is no further evidence contained in the trial record from which this Court can conclude Apollo is a common carrier. Apollo, therefore, cannot be held vicariously liable for Aydin's tortious conduct.

## D. Celebrity Catering Services Partnership

█ Celebrity Catering is the final Defendant this Court must discuss. The parties stipulated: "Celebrity Catering Services Partnership ('CCSP') was and is a foreign corporation which [sic] maintains an office in Monrovia, Liberia and *hires individuals for employment in the food and beverage departments of Celebrity cruise vessels*, including M/V Zenith. *CCSP employed Baris Aydin ('Aydin') at the time of the alleged incident.*" (JPTS at ¶ III(E))(emphasis added). Again, there is no evidence from which this Court could conclude CCSP is a common carrier. Accordingly, CCSP cannot be held strictly liable for Aydin's intentional tort.

## IV. CONCLUSION

In summary, there is no Defendant in this case who is both a common carrier and Aydin's employer for this Court to impose strict liability for the tort the jury found was committed by Aydin against Doe. Under Fed.R.Civ.P. 50(b), the Court shall grant Defendants' motion for judgment as a matter of law, since Doe cannot maintain her claims for vicarious liability under the controlling law, as stated in Judge Gold's opinion.

Additionally, under Fed.R.Civ.P. 50(c), since the Court granted Defendants' motion for judgment as a matter of law, the Court is also required to discuss Defendants' motion for a new trial (D.E. No. 226–1). Since the Court has found there is no basis from the evidence before this Court upon which any Defendant may be held liable for Ayin's conduct, there is no basis for Defendants' to seek a new trial. As such, Defendants' motion for a new trial is moot.

On the other hand, the issue the Court confronts is whether Doe should be granted a new trial based upon this opinion. Under Fed.R.Civ.P. 59(a): "[a] new trial may be granted ... for any of the reasons for which new trials have heretofore been granted." The reasons courts have granted new trials are:

> [T]he verdict is against the weight of the evidence, that the damages are excessive, or that for any other reasons the trial was not fair, and that the motion [for new trial] may also raise questions of law arising out of substantial errors in the admission or rejection of evidence or the giving or refusal of instructions.

11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2805 (2d ed.1995) (citations omitted).

In this case, the parties were aware of the theory under which they proceeded, as

is evidenced by the JPTS (D.E. No. 159–1). However, Doe did not present evidence upon which this Court could have imposed liability, in accordance with Judge Gold's opinion. Courts have denied motions for new trials where counsel failed to introduce evidence that existed at the time of trial. *See Aerated Prods. Co. Of Los Angeles v. Aeration Processes,* 95 F.Supp. 23 (S.D.Cal.1950). Further: "Appellant cannot relieve himself from the operation of the rule requiring presentation of the question to the trial court by raising it for the first time in his Motion for New Trial." *Wheeler v. Woods,* 723 P.2d 1224, 1228 (Wyo.1986). Accordingly, the Court shall not grant Doe a new trial for the above-stated reasons. It is, therefore:

**ORDERED AND ADJUDGED** that

1. Defendants' Motion for Judgment as a Matter of Law (D.E. No. 225–1) is hereby GRANTED.

2. The judgment in this case (D.E. No. 222–1) is hereby VACATED.

3. Judgment SHALL BE ENTERED in favor of Defendants, as is stated above. Plaintiff SHALL TAKE NOTHING by this action and Defendants SHALL GO HENCE without day.

4. The Clerk of the Court is DIRECTED to mark this case CLOSED and DENY ALL PENDING MOTIONS AS MOOT.